DocuSign Envelope ID: FF871DDB-FBA6-4CDC-8433-B44DCBAE247B

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JACQUELINE SKEVINGTON, individually and on behalf of others similarly situated, | ) ) ) | |
| | ) | Case No. 1:21-cv-03105-JPH-MG |
| | ) | |
| Plaintiff, | ) | Judge James Patrick Hanlon |
| | ) | |
| vs. | ) | Magistrate Judge Mario Garcia |
| | ) | |
| HOPEBRIDGE, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

This Class Action Settlement Agreement and Release ("Agreement") is entered into by and between Jacqueline Skevington ("Skevington" or "Plaintiff"), on behalf of herself and all others similarly situated, and Hopebridge, LLC ("Defendant"). Plaintiff and Defendant are each a "Party" and are referred to collectively herein as the "Parties."

WHEREAS, Skevington filed a civil lawsuit in the United States District Court for the Southern District of Indiana on December 28, 2021, captioned *Jacqueline Skevington v. Hopebridge LLC*, and docketed as Case No. 1:21-cv-03105-JPH-MG ("Litigation"), alleging that Defendant violated the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, et seq. ("FLSA") and the Indiana Wage Payment Statute, I.C. § 22-2-5-2 ("IWPS") by failing to pay Plaintiffs (defined below) in accordance with the FLSA and the IWPS;

WHEREAS, Defendant has denied and continues to deny that it violated any federal, state, or local laws, breached any duty, failed to pay any employees as required by the FLSA or the IWPS, engaged in any misclassification, misrepresentation, or other unlawful conduct with respect to any of its employees, including, but not limited to, the allegations that Plaintiff raised, or could have raised, in the Litigation;

WHEREAS, the Parties have engaged in an informal yet comprehensive exchange of information, including, reviewing documents and engaging in communications to review the circumstances of Plaintiff's employment and Defendant's pay practices;

WHEREAS, the Parties desire to avoid incurring further burdens, expenses, and costs of the Litigation and seek to resolve, in an amicable fashion, all matters arising out of, or related to, the Litigation and any claims that could have been raised by Plaintiff in the Litigation;

DocuSign Envelope ID: FF871DDB-FBA6-4CDC-8433-B44DCBAE247B

WHEREAS, Class Counsel (defined below) has analyzed and evaluated the merits of the claims made against Defendant and the impact of this Agreement on Plaintiffs, and, recognizing the significant risks of continued litigation, including the possibility that Plaintiffs otherwise may not recover anything or may recover an amount less than provided for in this Agreement, Class Counsel has concluded that the terms and conditions of this Agreement are reasonable and fair and the Agreement is in the Plaintiffs' best interest; and

WHEREAS, the Parties have determined that this matter should be settled in a Federal Rule of Civil Procedure 23(b)(3) class action rather than a more limited FLSA collective action.

NOW THEREFORE, in consideration of the mutual covenants and promises set forth in the Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the Litigation on the following terms and conditions:

I.   **DEFINITIONS.**

The defined terms set forth in this Agreement have the meanings ascribed to them below.

1.1.   **Affected Class Members.** Affected Class Members are Class Members (defined below) who do not timely and properly follow the procedure specified in the Class Notice (defined below) approved by the Court to validly "opt out" of the Settlement (defined below).

1.2.   **Agreement.** Agreement means this Class Action Settlement Agreement and Release.

1.3.   **Class Administrator.** Class Administrator means Analytics Consulting, LLC of Chanhassen, Minnesota.

1.4.   **Class Counsel.** Class Counsel means Robert Kondras of Hassler Kondras Miller LLP, Daniel Bryant of Bryant Legal, LLC, and Matthew Coffman of Coffman Legal, LLC.

1.5.   **Class Members or Class.** Class Members or Class mean all Rule 23 Class members (defined below) during the Class Period (defined below).

1.6.   **Class Notice.** Class Notice means the Court-approved Notice of Class Action Settlement and Fairness Hearing. The version of the Class Notice that will be proposed to the Court is attached hereto as Exhibit A.

1.7.   **Class Period.** Class Period refers to the period between December 28, 2019 and May 12, 2022.

1.8.   **Court**. Court shall mean the United States District Court for the Southern District of Indiana.

DocuSign Envelope ID: FF871DDB-FBA6-4CDC-8433-B44DCBAE247B

1.9. **Defendant.** Defendant shall mean Hopebridge, LLC.

1.10. **Defendant's Counsel.** Defendant's Counsel shall mean Erica Knear, Janica Pierce Tucker, Jonathan Olivito, and Pamela Krivda of Taft Stettinius & Hollister LLP.

1.11. **Effective Date.** The Effective Date is the date on which this Agreement becomes effective, which shall mean the later of (1) thirty (30) days following the Court's issuance of the Final Approval Order (defined below), if no appeal is taken from the Final Approval Order; (2) the expiration of any deadline for any appeal from the Final Approval Order; or (3) the Court's entry of the Final Approval Order after the resolution of any appeals.

1.12. **Fairness Hearing.** Fairness Hearing means the hearing before the Court relating to the Motion for Final Approval (defined below).

1.13. **Final Approval.** Final Approval means that the Settlement has been finally approved by the Court and either: (1) upon timely appeal, the Seventh Circuit Court of Appeal has declined to consider, affirmed, or otherwise approved the Court's Final Approval Order (defined below) and the applicable date for seeking further appellate review has passed; or (2) the applicable date for seeking appellate review of the Court's Final Approval Order has passed without timely appeal or request for review and cannot be extended.

1.14. **Final Approval Order.** Final Approval Order means the order entered by the Court after the Fairness Hearing that approves the material terms and conditions of this Agreement and the distribution of the Settlement Checks (defined below) and any Service Award (defined below), and that dismisses the Litigation with prejudice and orders the release of claims as provided for in this Agreement.

1.15. **Final Settlement Share Calculations.** Final Settlement Share Calculations is defined in Section 4.8 below.

1.16. **Litigation.** Litigation means the above-captioned case.

1.17. **Motion for Final Approval**. Motion for Final Approval means the Parties' anticipated Joint Motion for Judgment and Final Approval of Class Action Settlement Agreement and Release and accompanying Memorandum in Support.

1.18. **Net Settlement Amount.** Net Settlement Amount means the Settlement Amount to be paid by Defendant pursuant to this Agreement less deductions for: (1) Court-approved attorneys' fees, costs, and expenses for Class Counsel; (2) any Court-approved Service Award to Skevington; and (3) Class Administrator costs.

1.19. **Non-Participating Class Member.** Non-Participating Class Member means a Class Member who follows the procedure specified in the Class Notice approved by the Court to validly "opt out" of the Settlement.

DocuSign Envelope ID: FF871DDB-FBA6-4CDC-8433-B44DCBAE247B

1.20. **Notice Settlement Share Calculations.** Notice Settlement Share Calculations is defined in Section 4.8 below.

1.21. **Opt-out Period.** The Opt-out Period will be a date thirty (30) days after the mailing of the Class Notice to the Class Members.

1.22. **Plaintiff(s).** The Plaintiff is Skevington. Plaintiffs are Skevington and the Affected Class Members.

1.23. **Preliminary Approval Motion.** Preliminary Approval Motion means the Parties' anticipated Joint Motion for Preliminary Approval of Class Action Settlement Agreement and Release and the accompanying Memorandum in Support.

1.24. **Preliminary Approval Order.** Preliminary Approval Order means the Order entered by the Court preliminarily approving the terms and conditions of this Agreement and directing the manner and timing of providing Class Notice to the Class Members.

1.25. **Preliminary Settlement Share Calculations.** Preliminary Settlement Share Calculations is defined in Section 4.8 below.

1.26. **Released Claims.** Released Claims is defined in Section 9.1 below.

1.27. **Released Parties.** Released Parties is defined in Section 9.1 below.

1.28. **Rule 23 Class.** Rule 23 Class means all non-exempt, hourly-paid Registered Behavior Technicians ("RBTs") employed by Hopebridge, LLC at one or more of its locations in the United States at any time between December 28, 2019 and May 12, 2022. The Rule 23 Class does not include any RBT who opted in as a plaintiff and is entitled to a recovery in the settlement reached in the earlier case titled *Ryan Myres et al. v. Hopebridge, LLC*; Case No. 2:20-cv-5390-EAS-KAJ ("*Myres*"), filed in the United States District Court for the Southern District of Ohio. The individuals who are excluded from the Rule 23 Class because of their entitlement to a recovery in *Myres* are listed in Exhibit 1 to the *Myres* Collective Action Settlement Agreement and Release.

1.29. **Service Award.** Service Award means a payment made to Skevington to compensate her for initiating the Litigation, performing work in support of, or otherwise participating in, the Litigation, and undertaking the risk of liability in the event she was unsuccessful in the prosecution of the Litigation.

1.30. **Service Award Released Claims.** Service Award Released Claims is defined in Section 9.2 below.

1.31. **Settlement.** Settlement means the disposition of the Litigation, and all related claims, effectuated by, and in accordance with the terms of, this Agreement.

1.32. **Settlement Checks.** Settlement Checks means the checks generated and mailed by the Class Administrator to pay the Settlement Share (defined below) for each Affected Class Member.

DocuSign Envelope ID: FF871DDB-FBA6-4CDC-8433-B44DCBAE247B

1.33. **Settlement Amount.** Settlement Amount means the gross amount to be paid by Defendant as provided by this Agreement (except for Defendant's share of payroll taxes). Under no circumstances shall Defendant be obligated to pay any amount other than the Settlement Amount and its share of payroll taxes on the portion of the Settlement Shares, and any Service Award received by Skevington, allocated to wages.

1.34. **Settlement Share.** Settlement Share means each Affected Class Member's share of the Net Settlement Amount as provided for in this Agreement.

II.      **INITIAL PROCEDURAL ISSUES.**

2.1. **Binding Agreement.** This Agreement is a binding agreement and contains all materially agreed-upon terms for the Parties to seek a full and final settlement of the Litigation.

2.2. **Jurisdiction.** This Litigation is brought and is before the Court under the FLSA and the IWPS. The Parties agree that the Court has jurisdiction over each and all of the claims in the Litigation.

2.3. **Responsibility of Class Counsel to Hire the Class Administrator.** Class Counsel shall be responsible for hiring Analytics Consulting, LLC of Chanhassen, Minnesota to serve as the Class Administrator.

2.3.1. **Responsibilities of the Class Administrator and the Parties.** The Class Administrator shall be responsible for:

    a. Mailing the Class Notice to the Class Members in accordance with the Court's Preliminary Approval Order;

    b. Promptly forwarding to the Parties' counsel any documents in connection with a Class Member's efforts to "opt out" of or object to the Settlement;

    c. Establishing a Qualified Settlement Fund for the Settlement Amount within the meaning of 26 C.F.R. § 1.468B-1 and any related regulation or statute;

    d. Serving as the trustee of the Qualified Settlement Fund and acting as a fiduciary with respect to the handling, management, and distribution of the Qualified Settlement Fund, including the handling of tax-related issues and payments. The Class Administrator shall act in a manner necessary to obtain and maintain the status of a Qualified Settlement Fund within the meaning of 26 C.F.R. § 1.468B-1 and any related regulation or statute. The Parties shall cooperate to ensure such treatment and shall not take a position in any filing or before any tax authority inconsistent with such treatment. The Parties agree to any relation-back election required to obtain the status of Qualified Settlement Fund from the earliest possible date;

    e. Issuing all funds in connection with this Settlement from the Qualified Settlement Fund;

DocuSign Envelope ID: FF871DDB-FBA6-4CDC-8433-B44DCBAE247B

f.   Calculating the Settlement Share, as well as the individual tax withholding amounts and employer payroll tax amounts, for each of the Affected Class Members in accordance with the Court's Final Approval Order;

g.   Calculating the individual tax withholding amount and employer payroll tax amount for any Service Award awarded to Skevington by the Court;

h.   Informing Defendant's Counsel of the payroll tax calculations: (a) for any Service Award payment, within seven (7) days after the Service Award check is mailed and (b) for the Settlement Share payments, within seven (7) days after the Settlement Checks are mailed.

i.   Preparing and mailing the Settlement Checks to the Affected Class Members and any Service Award check to Skevington;

j.   Wiring any awarded attorneys' fees, costs, and expenses to Class Counsel;

k.   Issuing IRS Forms W-2, 1099, and W-9, as applicable, for all payments to Skevington, Class Counsel, and the Affected Class Members;

l.   Satisfying all federal, state, local, or other reporting requirements, including any applicable reporting with respect to attorneys' fees and other costs subject to reporting, and paying from the Qualified Settlement Fund any and all taxes, as well as any other obligations with respect to the payments or distributions not otherwise addressed in this Agreement. All taxes, including any estimated taxes, interest, or penalties, arising with respect to the income earned by the Qualified Settlement Fund, if any, including any taxes or tax detriments that may be imposed on Defendant with respect to income earned for any period during which the Qualified Settlement Fund does not qualify as a Qualified Settlement Fund for tax purposes ("Settlement Fund Taxes"), and expenses and costs incurred in connection with the operation and implementation of this paragraph, including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing, or failing to file, any returns described herein or otherwise required to be filed pursuant to applicable authorities ("Settlement Fund Tax Expenses"), shall be paid out of the Qualified Settlement Fund. Further, Settlement Fund Taxes and Settlement Fund Tax Expenses shall be treated as a cost of the administration of the Qualified Settlement Fund. The Parties agree to cooperate with the Class Administrator, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions set forth in this Section 2.3.1.

m.   Distributing the sum of any Settlement Check(s) that remain(s) uncashed after ninety (90) days of issuance of the Settlement Checks in accordance with Section 4.10;

n.   Distributing the reversion to Defendant in accordance with Section 4.7(c);

DocuSign Envelope ID: FF871DDB-FBA6-4CDC-8433-B44DCBAE247B

o.  Promptly apprising the Parties' counsel of its activities, timely responding to inquiries of the Parties or their counsel, and copying the Parties' counsel on material correspondence;

p.  Maintaining adequate records of its activities by, among other things, recording the date of the mailing of the Class Notice, Settlement Checks, and any Service Award, saving receipts of other sent and returned mail, saving any documents or correspondence relating to the issuance of the Settlement Checks and any Service Award, and saving any other communications and attempted communications with the Class Members;

q.  Confirming in writing to the Parties' counsel its completion of the administration of this Settlement;

r.  Any other tasks or responsibilities assigned to the Class Administrator in this Agreement but not specifically mentioned in this Section 2.3.1; and

s.  Such other tasks as are customarily and regularly performed by a class or settlement administrator and upon which the Parties agree.

2.4.  **Responsibilities of Defendant With Respect to the Calculation of Settlement Checks and Any Service Award.** Defendant shall cooperate with Class Counsel to determine the equal share each Affected Class Member shall receive under this Settlement. Defendant shall be responsible for paying the Settlement Amount to the Class Administrator so that Settlement Checks and any Service Award can be distributed. After the Class Administrator calculates the amount of payroll taxes, if any, owed by Defendant on the wage payment portion of the Settlement Shares and any Service Award received by Skevington, Defendant shall be responsible for providing that payroll tax amount to the Class Administrator so that the Class Administrator can then timely remit and report to the appropriate taxing authorities any payroll tax owed by Defendant in connection with the payments made under this Agreement.

III.  **PRELIMINARY APPROVAL MOTION.**

3.1. As soon as practicable following execution of this Agreement, Skevington shall submit to the Court a Preliminary Approval Motion which shall include a proposed Preliminary Approval Order (1) setting forth the findings required by Fed. R. Civ. P. 23(a) and 23(b)(3); (2) granting provisional certification of the Rule 23 Class pursuant to Fed. R. Civ. P. 23 and preliminary approval of the Settlement; (3) approving the Class Notice; (4) appointing Robert Kondras, Daniel Bryant, and Matthew Coffman as Class Counsel; and (5) scheduling the Fairness Hearing for the final approval of the Settlement.

3.2. The proposed Preliminary Approval Order shall set forth the date(s) by which Class Members must opt out of this Agreement, or, as applicable, provide objections to this Agreement. This date will be thirty (30) days from the mailing of the Class Notice to the Class Members (i.e., the Opt-out Period). The proposed Preliminary Approval Order will

DocuSign Envelope ID: FF871DDB-FBA6-4CDC-8433-B44DCBAE247B

also provide for the Court to set a date for a Fairness Hearing for Final Approval of the Settlement.

3.3. In the Preliminary Approval Motion, the Parties consent to the following process and shall inform the Court of the intended process to obtain a Final Approval Order and a judgment of dismissal that will, among other things, (1) approve the Settlement as fair, adequate, and reasonable; (2) incorporate the terms of the release contained in this Agreement; (3) dismiss the Litigation with prejudice; (4) award Class Counsel their attorneys' fees, costs, and expenses; and (5) award a Service Award, if any, to Skevington. If the Court denies the Preliminary Approval Motion, unless the Parties jointly agree to seek reconsideration of the ruling or to seek Court approval of a renegotiated settlement, the Litigation will resume as if no Settlement had been attempted and neither the Agreement or Settlement, nor any negotiations leading to the Agreement or Settlement, shall be used or be admissible in any subsequent proceedings, either in this Litigation, with the Court, or in any other court or forum.

IV.     **SETTLEMENT TERMS.**

4.1. **Settlement Amount.** Defendant agrees to pay the Settlement Amount of $326,493.00, which shall fully resolve and satisfy and encompass (1) all payments, including Settlement Shares, to Class Members, (2) any Service Award to Skevington, (3) the Class Administrator's costs, and (4) Class Counsel's attorneys' fees, costs, and expenses including all attorneys' fees, costs, and expenses incurred to date and to be incurred in preparing Settlement documents, securing trial and appellate court approval of the Settlement, attending to the administration of the Settlement, and obtaining dismissal with prejudice of the Litigation. Defendant's share of payroll taxes is not included in the Settlement Amount.

4.2. **Settlement Amounts Payable as Attorneys' Fees and Expenses.** At the Fairness Hearing and through the Motion for Final Approval, Class Counsel shall petition the court for an award of attorneys' fees of no more than $78,666.67 of the Settlement Amount referenced in this Settlement Agreement, and shall seek reimbursement of their actual litigation costs and expenses to be paid from the Settlement Amount. Defendant agrees not to oppose Class Counsel's request for attorneys' fees, costs, and expenses pursuant to this Agreement. Class Counsel will receive an IRS Form 1099 from the Class Administrator with respect to the awarded attorneys' fees, costs, and expenses.

4.3. **Service Award to Skevington.** Defendant will not oppose a Service Award of up to $5,000.00 (or a lesser amount to be determined by Class Counsel or awarded by the Court) to be paid out of the Settlement Amount to Skevington. This Settlement is not conditioned upon the Court's approval of the Service Award and any amount not approved by the Court will become part of the Net Settlement Amount.

DocuSign Envelope ID: FF871DDB-FBA6-4CDC-8433-B44DCBAE247B

4.4. **Settlement Shares and Service Awards.**

(a) Only Affected Class Members will be entitled to receive a Settlement Share under this Agreement.

(b) Only Skevington will be entitled to receive a Service Award under this Agreement.

(c) The allocation of Settlement Shares will be made from the Net Settlement Amount.

4.5. **Settlement Formula.** Class Counsel shall equally divide the Net Settlement Amount by the number of Class Members (i.e., approximately 6,360) to calculate Settlement Shares.

4.6. **Taxation.** For income and payroll tax purposes, the Parties agree that fifty percent (50%) of each Settlement Share, and of any Service Award received by Skevington, shall be allocated as wages (which shall be subject to required withholdings and deductions and reported as wage income under IRS Form W-2 as required by law), and the remaining fifty percent (50%) of each Settlement Share, and of any Service Award received by Skevington, shall be allocated as liquidated damages (which shall not be subject to required withholdings and deductions and shall be reported as non-wage income under IRS Form 1099 as required by law). The Class Administrator shall withhold and timely remit and report to the appropriate taxing authorities the employee's share of any applicable payroll taxes or contributions (e.g., FICA, FUTA, SUTA, Medicare) from the portion allocated to wages of each paid Settlement Share and of any Service Award received by Skevington.

Defendant shall provide to the Class Administrator, separately and in addition to the Settlement Amount of $326,493.00 set forth in Section 4.1 of this Agreement, the employer's share of all applicable payroll taxes on the wage payment portion of the Settlement Shares and of any Service Award received by Skevington, as calculated by the Class Administrator. The Class Administrator shall be responsible for timely remitting and reporting these payroll tax amounts to the appropriate taxing authorities for the paid Settlement Shares and any Service Award received by Skevington. The amount of the employer's share of applicable payroll taxes will be calculated on the amount allocated to wages only and not to liquidated damages or non-wages. The total amount paid by Defendant under this Agreement shall not exceed the Settlement Amount as stated in Section 4.1 plus Defendant's legal withholding liability on the amount allocated to wages of the Settlement Shares and of any Service Award received by Skevington. The Class Administrator shall not withhold any taxes from the portion allocated to non-wage income of each Settlement Share and of any Service Award received by Skevington. As required by the IRS rules, the Class Administrator shall issue to Skevington and each Affected Class Member an IRS Form W-2 in the year of payment to report the portion allocated to wages

DocuSign Envelope ID: FF871DDB-FBA6-4CDC-8433-B44DCBAE247B

of the Settlement Share and of any Service Award received by Skevington, and an IRS Form 1099 to report the portion allocated to non-wages of the Settlement Share and of any Service Award received by Skevington.

Other than the withholding and reporting requirements herein, Plaintiff, Affected Class Members, and Class Counsel shall be solely responsible for the reporting and payment of their share of any federal, state, and/or local income or other taxes on payments received under this Agreement. Plaintiff agrees and acknowledges that Defendant, the Released Parties, and counsel for Defendant and the Released Parties have not made any representations regarding the tax consequences of any payments made under this Agreement.

4.7. **Effect of Non-Participating Class Members.**

(a) Each Class Member who follows the procedure specified in the Class Notice approved by the Court to validly "opt out" of the Settlement will be a Non-Participating Class Member and will not receive a Settlement Share and will not be bound by the Settlement.

(b) Each Class Member who does not follow the procedure specified in the Class Notice approved by the Court to validly "opt out" of the Settlement will be an Affected Class Member subject to the release explained in Section 9.1 and will be entitled to receive a Settlement Share.

(c) **Reversion to Defendant.** Settlement Shares of all Non-Participating Class Members shall revert to Defendant. The Class Administrator shall return this reversion amount to Defendant within sixty (60) days after the Effective Date.

4.8. **Dates for Settlement Share Calculations, Funding, and Payment.**

(a) Class Counsel shall submit to Defendant's Counsel initial Settlement Share calculations under Section 4.5 for all Class Members ("Notice Settlement Share Calculations") within ten (10) days following Preliminary Approval.

(b) Defendant's Counsel shall notify Class Counsel within five (5) days following the receipt of the Notice Settlement Share Calculations if they have any proposed revisions to the Notice Settlement Share Calculations. The Parties shall work in good faith to resolve any differences over the revisions to the Notice Settlement Share Calculations and shall only seek Court intervention to resolve such differences in extraordinary circumstances.

(c) Class Counsel shall submit to Defendant's Counsel revised Settlement Share calculations under Section 4.5 for all Class Members ("Preliminary Settlement Share Calculations") within five (5) days after the Effective Date. For purposes of determining the Net Settlement Amount, Class Counsel shall use the actual amount of attorneys' fees approved by the Court in the Final Approval Order.

DocuSign Envelope ID: FF871DDB-FBA6-4CDC-8433-B44DCBAE247B

(d) Defendant's Counsel must provide Class Counsel with any revisions to the Preliminary Settlement Share Calculations, if any, within ten (10) days after the Effective Date. All Preliminary Settlement Share Calculations for which Defendant proposes no revisions within ten (10) days after the Effective Date shall become "Final Settlement Share Calculations." All Preliminary Settlement Share Calculations that the parties jointly revise and agree to shall become Final Settlement Share Calculations.

(e) If, after good faith negotiations, the parties cannot agree on revisions to the Preliminary Settlement Share Calculations (if any), they shall seek Court intervention within fifteen (15) days after the Effective Date. In the event such Court intervention is necessary, all deadlines herein concerning the payment of the Settlement Shares shall be suspended until the Court resolves the dispute. The Court's resolution of any dispute with respect to the Preliminary Settlement Share Calculations shall constitute the Final Settlement Share Calculations.

(f) The Final Settlement Share Calculations are not subject to challenge, including by the Class Members or by the Parties.

(g) Class Counsel shall send Defendant's Counsel all Final Settlement Share Calculations within three (3) days after all Final Settlement Share Calculations are determined for all Class Members.

(h) Defendant shall transfer the Settlement Amount to the Class Administrator within fourteen (14) days after the Effective Date.

(i) The Class Administrator shall mail the Settlement Checks and Service Award within five (5) days after receiving the Settlement Amount from Defendant.

4.9. **Payment Dates.** Payment of Class Counsel's attorneys' fees, costs, and expenses approved by the Court shall be made by the Class Administrator to Class Counsel within fourteen (14) days after the Class Administrator receives the Settlement Amount from Defendant.

4.10. **Uncashed Settlement Checks.** Any Settlement Check that remains uncashed after ninety (90) days of issuance to an Affected Class Member shall be deemed null and void and shall be distributed to the other Affected Class Members on a pro rata basis according to the process for calculating Settlement Shares outlined in Section 4.5.

V.    **CLASS MEMBER PROCEDURE AND AFFECTED CLASS MEMBER STATUS.**

5.1. **Election Not to Participate in Settlement.** The Class Notice shall provide that Class Members who wish to exclude themselves from the Settlement must follow the procedure specified in the Class Notice approved by the Court to validly "opt out" of the Settlement within thirty (30) days after the mailing of the Class Notice. A Class Member who follows the procedure specified in the Class Notice approved by the Court to validly

DocuSign Envelope ID: FF871DDB-FBA6-4CDC-8433-B44DCBAE247B

"opt out" of the Settlement will not be bound by the Settlement or entitled to receive a Settlement Share. Defendant will remain free to contest any claim brought by a Non-Participating Class Member that would have been barred by this Agreement, and nothing in this Agreement will constitute or be construed as a waiver of any defense Defendant has or could assert against such a claim.

5.2. **Class Members Who Do Not "Opt Out" Become Affected Class Members.** A Class Member who does not follow the procedure specified in the Class Notice approved by the Court to validly "opt out" of the Settlement by the deadline specified above will automatically become an Affected Class Member, regardless of whether he or she has objected to the Settlement. Affected Class Members are bound by all terms and conditions of the Settlement, including the release discussed in Section 9.1.

VI.     **CLASS NOTICES.**

6.1. Within twenty-eight (28) days following the Court's entry of the Preliminary Approval Order, Defendant's Counsel shall provide Class Counsel with a list of all Class Members and their last known addresses and personal email addresses (where available) under protection of a confidentiality agreement. This list shall be based on Defendant's available records.

6.2. Within forty (40) days after the Court's entry of the Preliminary Approval Order, the Class Administrator shall mail the Class Notice approved by the Court to the Class Members. The Class Administrator shall use all standard skip tracing devices to verify the accuracy of all addresses before the initial mailing date to ensure that the Class Notice are sent to all Class Members at the address most likely to result in immediate receipt of the Settlement documents. It will be conclusively presumed that if an envelope so mailed has not been returned within thirty (30) days of the mailing that the Class Member received the Class Notice. If an envelope is returned because of an incorrect address, the Class Administrator will promptly, and not later than five (5) days after receipt of the return envelope, use reasonable diligence to obtain a current address and re-mail the envelope to such address. The Class Administrator will notify Class Counsel and Defendant's Counsel of any Class Notice sent to a Class Member that is returned as undeliverable after the first mailing, as well as any such Class Notice returned as undeliverable after any subsequent mailing(s) as set forth in this Agreement.

6.3. The Class Notice shall provide that Class Members who choose to "opt out" of the Settlement as set forth in this Agreement (i.e., to become Non-Participating Class Members) must, not later than thirty (30) days after the Class Administrator mails the Class Notice, mail an opt-out request letter saying that the Class Member wants to be excluded from the Litigation. The Class Member's request must be mailed to counsel for the Parties and include the title of the Lawsuit and the Class Member's full name, current address, and signature; this procedure will be specified in the Class Notice approved by the Court to

DocuSign Envelope ID: FF871DDB-FBA6-4CDC-8433-B44DCBAE247B

validly "opt out" of the Settlement. If a question is raised about compliance with the procedure specified in the Class Notice approved by the Court to validly "opt out" of the Settlement, Class Counsel and Defendant's Counsel will, among other things, have the right to demand additional proof of the Non-Participating Class Member's identity and efforts and interest in "opting out" of the Settlement. A Non-Participating Class Member who follows the procedure specified in the Class Notice approved by the Court to validly "opt out" of the Settlement will not be bound by the Settlement or entitled to receive a Settlement Share. Defendant will remain free to contest any claim brought by a Non-Participating Class Member that would have been barred by this Agreement, and nothing in this Agreement will constitute or be construed as a waiver of any defense Defendant has or could assert against such a claim.

6.4. The Opt-out Period during which Class Members may opt out of the Settlement shall be thirty (30) days after mailing of the Class Notice. Class Members whose first mailing was returned to the Class Administrator as undeliverable, will also be required to respond within the same Opt-out Period (as if the first mailing was successful). The Class Administrator will not be required to attempt more than two mailings of the Class Notice to any Class Member.

6.5. The Class Administrator shall stamp the postmark date on the original of each of any Class Notice or documents responsive to Class Notice it receives from Class Members and shall serve on the Parties copies of each document received not later than three (3) days after receipt thereof to facilitate, among other things, filing with the Clerk of the Court.

6.6. Class Members who, within the Opt-out Period, do not follow the procedure specified in the Class Notice approved by the Court to validly "opt out" of the Settlement and become Non-Participating Class Members will become Affected Class Members.

6.7. The Class Administrator shall, within three (3) days after the end of the Opt-out Period, send a final list of all Non-Participating Class Members and Affected Class Members to Defendant's Counsel and Class Counsel by both email and overnight delivery. The Class Administrator shall retain the stamped originals of all Class Notice, as well as originals of all accompanying envelopes in its files. If the Class Administrator or the Parties receive an opt-out request letter after the Class Administrator has sent the final list, the Class Administrator shall update the final list and send that updated final list to Defendant's Counsel and Class Counsel within three (3) days after receiving the opt-out request letter.

## VII.   OBJECTIONS TO SETTLEMENT.

7.1. Affected Class Members who wish to present objections to the Settlement at the Fairness Hearing, including objections to the payment of Class Counsel's attorneys' fees, costs, and expenses, must first do so in writing. To be considered, such objection must be mailed to the Court and counsel for the Parties not later than thirty (30) days after the

DocuSign Envelope ID: FF871DDB-FBA6-4CDC-8433-B44DCBAE247B

Class Administrator mails the Class Notice regardless of whether a subsequent mailing is required, or by such other date as may be ordered by the Court. The objection must include all reasons for the objection and be accompanied by any evidence, briefs, motions, or other materials that the objecting Affected Class Member intends to offer in support of the objection. Any reasons not included in the objection will not be considered. The objection must also include the title of the Lawsuit and the name, current address, and signature of the Affected Class Member making the objection. An Affected Class Member who fails to specify his or her objections in writing in conformity with the specified time and procedures shall be deemed to have waived all objections.

7.2. An Affected Class Member who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing as part of the objection, and his or her failure to so specify will be deemed a waiver of the right to appear. An Affected Class Member may withdraw his or her objections at any time, consistent with Rule 23. No Affected Class Member may appear at the Fairness Hearing to present an objection unless he or she has filed a timely objection that complies with the procedures provided in this section. No Affected Class Member may present an objection at the Fairness Hearing based on a reason not stated in his or her written objections. A Class Member who has followed the procedure specified in the Class Notice approved by the Court to validly "opt out" of the Settlement and become a Non-Participating Class Member may not submit objections to the Settlement or present objections to the Settlement during the Fairness Hearing.

7.3. The Parties may file with the Court written responses to any filed objections no later than seven (7) days before the Fairness Hearing or by such other deadline as set by the Court.

## VIII. FAIRNESS HEARING AND MOTION FOR FINAL APPROVAL AND DISMISSAL.

8.1. Not later than fourteen (14) days before the Fairness Hearing, the Parties shall file a Motion for Final Approval, together with Plaintiff's motion seeking the payment of attorneys' fees, costs, expenses, and the Service Award.

8.2. At the Fairness Hearing and in the Motion for Final Approval, the Parties shall request that the Court, among other things: (1) certify the Rule 23 Class for purposes of settlement; (2) approve the Settlement and Agreement as fair, reasonable, adequate, and binding on all Affected Class Members; (3) approve the Service Award to Skevington; (4) order that attorneys' fees, costs, and expenses be paid to Class Counsel from the Settlement Amount; (5) order the payment of the Settlement Shares to the Affected Class Members and the Service Award to Skevington pursuant to the terms of this Agreement; (6) order that the sum of any Settlement Check(s) that remain(s) uncashed after ninety (90) days of issuance of the Settlement Checks be distributed in accordance with Sections 2.3.1 and 4.10. above; (7) order the reversion to Defendant in accordance with Section 4.7(c); (8)

DocuSign Envelope ID: FF871DDB-FBA6-4CDC-8433-B44DCBAE247B

order the dismissal with prejudice of all claims asserted in the Litigation and the release of claims provided for in this Agreement; and (9) enter a Final Approval Order.

8.3. The Parties shall request that the Final Approval Order direct Class Counsel to provide verification to Defendant's Counsel within ten (10) days of mailing that the Class Administrator has distributed the Settlement Checks.

8.4. The Parties shall also request that in the Final Approval Order the Court retain continuing jurisdiction to construe, interpret, and enforce the Agreement; to supervise the administration of and distributions from the Settlement Amount; and to hear and adjudicate any dispute or litigation arising from, or relating to, this Agreement or issues of law and facts asserted in the Litigation.

8.5. If the Court fails to enter a Final Approval Order that retains the material terms described in this Agreement, or if the Final Approval Order is set aside by appeal, the Parties will resume the Litigation unless the Parties jointly agree to (1) seek reconsideration or appellate review of the decision declining to enter a Final Approval Order that retains the material terms described in this Agreement; or (2) attempt to renegotiate the Settlement and seek Court approval of the renegotiated settlement.

8.6. If any reconsideration and/or appellate review is denied, or a mutually agreed-upon settlement is not approved, the Litigation shall proceed as if no Settlement had been attempted and neither the Agreement or Settlement, nor any negotiations leading to the Agreement or Settlement, shall be used or be admissible in any subsequent proceedings, either in this Litigation, with the Court, or in any other court or forum.

8.7. If the Litigation resumes under the circumstances in Section 8.6, Class Counsel shall provide notice to the Affected Class Members that the Agreement did not receive Final Approval and that, as a result, no payments will be made to Affected Class Members under the Agreement and no rights are released by the Affected Class Members under this Agreement. Such notice shall be mailed by Class Counsel, via the Class Administrator to the addresses used by Class Counsel in mailing the Class Notice within a reasonable time after the Litigation resumes under the circumstances in Section 8.6. Plaintiff and Defendant shall evenly split the costs associated with mailing such notice.

IX.   **RELEASE OF CLAIMS.**

9.1. **Affected Class Members.** Upon the Court's entry of the Final Approval Order, each Affected Class Member shall release, and forever discharge, Defendant and Released Parties from any and all wage and hour claims, including, but not limited to, any and all claims, rights, demands, liabilities, and causes of action of every nature and description, whether known or unknown, arising on, or before the date of the Final Approval Order, that were, or could have been, asserted under the FLSA, the IWPS, Article II, § 34a of the Ohio Constitution, or any other applicable federal, state, or local wage and hour law, regulation, or rule relating to unpaid and/or untimely payment of wages, overtime, or

DocuSign Envelope ID: FF871DDB-FBA6-4CDC-8433-B44DCBAE247B

compensation of any kind, any related common law and/or equitable claims (e.g., breach of contract, unjust enrichment, etc.), and any claims for liquidated damages, punitive damages, attorneys' fees, costs, expenses, penalties, interest, settlement administration costs, and/or service awards based on and/or relating to any of the allegations asserted in this Litigation or *Myres* ("Released Claims").

As used in this Agreement, the term "Released Parties" means (i) Defendant and any past, present, or future holding companies, parents, subsidiaries, divisions, affiliates, insurers, insurance policies, and/or benefit plans; (ii) each of the past and present officers, owners, directors, board members, investors, vendors, contractors, clients, managers (both direct and indirect), agents, employees, equity holders (e.g., shareholders, holders of membership interests, etc.), representatives, administrators, fiduciaries, and attorneys of Defendant and/or the entities, plans, or persons described in this sentence, all jointly and severally, and each in their representative, corporate, and personal capacities; (iii) any other persons or entities acting by, through, under, or in concert with, Defendant and/or any of the other entities, plans, or persons described in this sentence; and (iv) the predecessors, successors, transferees, and assigns of Defendant and/or any of the other entities, plans, or persons described in this sentence. The Agreement specifically inures to the benefit of any and all of Defendant's heirs, successors in interest, assigns and merged entities.

9.2. **Service Award Released Claims.** In consideration of her eligibility for the Service Award, Skevington, on behalf of herself and her heirs and assigns, hereby forever releases and discharges, through the date of the Final Approval Order, Defendant and the Released Parties from any and all claims, obligations, causes of action, actions, losses, expenses, demands, rights, and liabilities of every kind, nature and description, whether known or unknown, whether anticipated or unanticipated, arising on or prior to the date of the Final Approval Order, including but not limited to those claims which: (a) were pleaded in the Litigation at any time; and/or (b) could have been pleaded in the Litigation, including all claims based on any of the following: (i) any alleged untimely payment and/or failure to pay any type of overtime wages; (ii) any alleged untimely payment and/or failure to pay any type of minimum or other wages; (iii) any alleged failure to pay any type of otherwise earned wages (including straight time wages, bonuses, commissions, incentive payments, etc.); (iv) any other alleged wage and hour claims; (v) any other alleged wage and hour violation under any federal law, regulation, or rule; (vi) any other alleged wage and hour violation under any state or local law, regulation, or rule; (vii) any alleged discrimination, retaliation, harassment, or wrongful discharge, and (viii) any statutory, constitutional, regulatory, contractual, public policy, or common law employment-related claims for any type of relief, including wages, damages, restitution, equitable relief, penalties, interest, attorneys' fees, or litigation costs. This release includes any and all of the following based on any of the matters released by the foregoing: penalties, liquidated damages, punitive damages, attorneys' fees and expenses, litigation costs, restitution, penalties, interest, taxes, and equitable relief ("Service Award Released Claims"). For the avoidance of doubt,

DocuSign Envelope ID: FF871DDB-FBA6-4CDC-8433-B44DCBAE247B

this is a complete and general release of all possible claims to the maximum extent allowed under the law. The Service Award Released Claims do not include any workers' compensation claims, claims for unemployment benefits, or claims that cannot be released by law.

9.3. **Class Counsel.** Class Counsel and Plaintiff, on behalf of the Class and each individual Class Member, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that they may have against Defendant or the Released Parties for attorneys' fees, costs, or expenses associated with Class Counsel's representation of Plaintiff and the Class. Plaintiff and Class Counsel further understand and agree that any payments of attorneys' fees, costs, or expenses approved by the Court shall be the full, final, and complete payment of all attorneys' fees, costs, and expenses associated with Class Counsel's representation of Plaintiff and the Class.

9.4. **Waiver of Unknown Claims.** It is the desire of the Parties to fully, finally, and forever settle, compromise, and discharge all Released Claims and Service Award Released Claims that were or could have been asserted against Defendant and the Released Parties, whether known or unknown, liquidated or unliquidated. Plaintiff or the Class may hereafter discover facts in addition to or different from those which they now know or believe to be true with respect to the subject matter of the Released Claims and the Service Award Released Claims. But upon the entry of the Final Approval Order, the Affected Class Members and Plaintiff shall be deemed to have, and by operation of the Final Approval Order and this Agreement shall have, fully, finally, and forever settled and released any and all Released Claims and Service Award Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which then exist, or heretofore have existed upon any theory of law of equity now existing or coming into existence in the future accruing from the beginning of time through the date of entry of the Final Approval Order, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of different or additional facts.

The Parties recognize and agree that the terms of this Agreement and the scope of the releases by Plaintiff and the Affected Class Members are intended to provide for complete res judicata and collateral estoppel effect for all Released Claims and Service Award Released Claims.

X.      **NO FINAL APPROVAL ORDER.**

If the Court does not issue a Final Approval Order that retains the material terms described in this Agreement, then Defendant or Plaintiff may declare this Agreement and this Settlement null and void. The failure by the Court or an appellate court to award or sustain the full amount of any Service Award or Class Counsel's attorneys' fees, costs, or

DocuSign Envelope ID: FF871DDB-FBA6-4CDC-8433-B44DCBAE247B

expenses shall not constitute a failure to approve or a material modification that would allow this Settlement or Agreement to become, or be declared, null and void.

XI. **CAFA NOTICE.**

Pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715, within ten (10) days after the Parties file their Preliminary Approval Motion, Defendant will mail a CAFA notice to the Attorney General of the United States, the Attorney General of the State of Indiana, and the Attorney General of each other state where Class Members reside according to Defendant's records.

XII. **NO EFFECT ON BENEFITS ENTITLEMENT.**

No amounts paid in connection with the Settlement or this Agreement, including any Service Award or Settlement Share, are intended to, or will, be taken into account in determining any Class Member's rights or benefits under any benefit plan or program offered, administered, or provided by Defendant, the Released Parties, or any third-party. No Class Member will use this Agreement as a basis for a request for participating in, or for benefits under, any such plan or program.

XIII. **WAIVER OF APPEALS.**

Defendant and Plaintiff waive all appeals from the Court's Final Approval Order unless the Court materially modifies the Settlement or this Agreement or reduces the amounts to be awarded as a Service Award or Class Counsel's attorneys' fees, costs, and expenses.

XIV. **AUTHORITY TO ACT FOR PLAINTIFF.**

Class Counsel represent and warrant that they have full authority to enter into this Agreement on behalf of Plaintiff and to bind her, individually and as the Class representative, to all of its terms and conditions.

XV.   **FAIR, ADEQUATE, AND REASONABLE SETTLEMENT.**

The Parties agree that the Settlement and this Agreement are fair, adequate, and reasonable and will so represent to the Court.

XVI.   **MODIFICATION OR CANCELLATION OF AGREEMENT.**

This Agreement may not be modified or canceled in any manner except as explicitly provided for in this Agreement or by a writing signed by Class Counsel and Defendant's Counsel (or another authorized representative of Defendant).

The waiver by any Party of a breach of any provision of this Agreement will not operate or be construed as a waiver of any subsequent breach by any Party, nor will any waiver operate or be construed as a rescission of this Agreement. No breach of this

DocuSign Envelope ID: FF871DDB-FBA6-4CDC-8433-B44DCBAE247B

Agreement will permit the non-breaching Party to repudiate the Agreement or refuse or fail to perform any obligation required hereunder.

XVII.  **INVALIDITY OF ANY PROVISION.**

Before declaring any provision of this Agreement invalid, the Court shall first attempt to construe the provisions valid to the fullest extent possible consistent with applicable law so as to define all provisions of this Agreement valid and enforceable. If the Court should declare any provision of this Agreement invalid, the Parties shall have an opportunity to attempt to negotiate modifications necessary to address the Court's concerns. If a provision of this Agreement is found to be invalid, and the invalidity of that provision constitutes a material modification of this Agreement, then Defendant or Plaintiff may declare this Agreement null and void.

XVIII. **APPLICABLE LAW.**

This Agreement shall be governed by the laws of the State of Indiana.

XIX. **HEADINGS.**

Section headings in this Agreement are included for convenience of reference only and shall not be a part of this Agreement for any other purpose.

XX.     **NO PRIOR ASSIGNMENTS.**

The Parties represent and warrant that they have not directly or indirectly assigned, transferred, encumbered, or purported to assign, transfer, or encumber, to any person or entity any portion of any liability, claim, demand, action, cause of action, or right released or discharged in this Agreement.

XXI. **BINDING ON SUCCESSORS.**

This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, executors, administrators, successors, and assigns.

XXII. **NO ADMISSION OF LIABILITY OR CLASS CERTIFICATION.**

22.1. Defendant and the Released Parties deny that they or any of their present or former owners, stockholders, predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, parents, subsidiaries, affiliates, benefits plans, plan fiduciaries, and/or administrators, have engaged in any unlawful activity, have failed to comply with the law in any respect, have any liability to anyone under the claims asserted in the Litigation, or that, but for the Settlement, a class should be certified in the Litigation. This Agreement is entered into solely for the purpose of compromising highly disputed claims.

22.2. Nothing in this Agreement is intended or will be construed as: (1) an admission of liability or wrongdoing by Defendant, the Released Parties, or any of their

DocuSign Envelope ID: FF871DDB-FBA6-4CDC-8433-B44DCBAE247B

former or present owners, stockholders, predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, parents, subsidiaries, affiliates, benefits plans, plan fiduciaries, and/or administrators; (2) an admission by Plaintiffs that any of their claims were non-meritorious; or (3) an admission by Plaintiffs that any defense asserted by Defendant was meritorious. This Settlement and the fact that Plaintiffs and Defendant were willing to settle the Litigation will have no bearing on, and will not be admissible in connection with, any litigation other than solely in connection with, and as specified in, this Agreement.

22.3. The Parties agree that the stipulation of class certification is for settlement purposes only and if, for any reason, the Court does not issue a Final Approval Order that retains the material terms described in this Agreement, the stipulation will be of no force or effect. The Parties agree that certification for settlement purposes is in no way an admission that class certification is proper and that evidence of this stipulation for settlement purposes only will not be deemed admissible in any other proceeding or for any purpose other than settlement, and in accordance with the terms of this Agreement, in this Litigation.

22.4. Whether or not there is Final Approval, neither the Settlement, this Agreement, any documents, statements, proceeding, negotiations, or conduct related to the Settlement or the Agreement, nor any reports or accounting of those matters, will be: (1) construed as, offered as, or admitted in evidence as, received as, or deemed to be evidence for any purpose adverse to Defendant or any of the Released Parties, including, but not limited to, evidence of a presumption, concession, indication, or admission by Defendant or any of the Released Parties of any liability, fault, wrongdoing, omission, or damage; or (2) disclosed, referred to, or offered in evidence against Defendant or any of the Released Parties in any further proceeding in the Litigation or any other civil, criminal, or administrative action or proceeding except for purposes of effectuating the Settlement pursuant to this Agreement.

22.5. This Section and all other provisions of this Agreement notwithstanding, any and all provisions of this Agreement may be admitted in evidence, and otherwise used in, a proceeding to enforce any or all terms of this Agreement or in defense of any claims released or barred by this Agreement.

## XXIII. CONSTRUCTION.

The Parties agree that the terms and conditions of this Agreement are the result of lengthy, intensive, arms-length negotiations between the Parties and that this Agreement shall not be construed in favor of or against any Party by reason of the extent to which any Party or its counsel participated in the drafting of this Agreement.

DocuSign Envelope ID: FF871DDB-FBA6-4CDC-8433-B44DCBAE247B

XXIV. **NOTICES.**

Unless otherwise specifically provided herein, all notices, demands, or other communications given hereunder shall be in writing and sent via email and United States registered or certified mail, return receipt requested, to each of the following individuals:

**To Plaintiff and the Class:**

Robert Kondras
HASSLER KONDRAS MILLER LLP
100 Cherry Street
Terre Haute, IN  47807
kondras@hkmlawfirm.com

**To Defendant:**

Erica M. Knear
Taft Stettinius & Hollister LLP
One Indiana Square, Suite 3500
Indianapolis, IN 46204
eknear@taftlaw.com

Pamela S. Krivda
Janica Pierce Tucker
Jonathan N. Olivito
Taft Stettinius & Hollister LLP
41 S. High Street, Suite 1800
Columbus, OH 43215
pkrivda@taftlaw.com
jpierce@taftlaw.com
jolivito@taftlaw.com

XXV. **DEADLINES.**

If any deadline under this Agreement falls on a Saturday, Sunday, or legal holiday, the Parties agree that the deadline will be deemed to be the next business day.

XXVI. **EXECUTION IN COUNTERPARTS.**

This Agreement may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Agreement which shall be binding upon and effective as to all Parties.

DocuSign Envelope ID: FF871DDB-FBA6-4CDC-8433-B44DCBAE247B

ON BEHALF OF PLAINTIFFS: JACQUELINE SKEVINGTON

Signature _____

Printed name: Jackie Skevington

Title:_____

Dated: 5/7/2023


ON BEHALF OF HOPEBRIDGE, LLC

Signature: _____

Printed name: Ben Seib

Title: CFO

Dated: 5/9/2023