# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| JACQUELINE SKEVINGTON, individually and on behalf of others similarly situated, | )<br>)<br>) |
| | ) Case No. 1:21-cv-03105-JPH-MG |
| Plaintiff, | )<br>) Judge James Patrick Hanlon |
| | )<br>) Magistrate Judge Mario Garcia |
| vs. | ) |
| HOPEBRIDGE, LLC, | )<br>) |
| Defendant. | ) |

## *MEMORANDUM IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE*

### I. INTRODUCTION

Plaintiff Jacqueline Skevington ("Skevington") asserts claims which relate to the payment of wages to employees of Defendant Hopebridge, LLC ("Defendant" or "Hopebridge") (Hopebridge and Skevington are the "Parties"), from December 28, 2019 through May 12, 2022 ("Class Period"). After conducting discovery and further informal exchange of wage and time clock data about the class claims, including the exchange of relevant documents, the Parties agreed to settle this matter.

The Parties' settlement involves the certification, for settlement purposes only, of a class under Federal Rule of Civil Procedure 23(b)(3). The proposed class ("Rule 23 Class") consists of, with limited exceptions identified below, all non-exempt, hourly-paid Registered Behavior Technicians ("RBTs") employed by Defendant at one or more of its locations in the United States at any time between December 28, 2019 and May 12, 2022. There are approximately 6,360 Rule 23 Class Members. While denying liability, Defendant has agreed to pay the Rule 23

Class in accordance with the terms of the Parties' Class Action Settlement Agreement and Release ("Agreement").[1] This early resolution of claims avoids the substantial time and expense of litigating this class action.

While Plaintiff and Defendant disagree as to liability and the most likely outcome in the case, data showed that the average RBT has a maximum unpaid wage claim that is small, likely far less than $50 per class member. The Parties have agreed to divide the Net Settlement Amount[2] equally by the number of Class Members rather than dilute the Net Settlement Amount by paying excessive attorneys' fees and class administration fees to figure out each of the approximately 6,360 Class Members' precise, pro rata share of the funds. Such efforts would spend a significant portion of the Net Settlement Amount.

Through their Joint Motion, the Parties request that the Court enter the proposed Order Preliminarily Approving Class Action Settlement and Class Notice and Setting Fairness Hearing ("Preliminary Approval Order"), which (1) sets forth the findings required by Federal Rule of Civil Procedure 23(a) and 23(b)(3), (2) grants provisional certification of the Rule 23 Class pursuant to Federal Rule of Civil Procedure 23(b)(3) and preliminary approval of the Agreement and settlement,[3] (3) approves the proposed Class Notice and authorizes the mailing of the Class Notice to the Rule 23 Class Members, (4) appoints Class Counsel, and (5) schedules a Fairness Hearing for final approval of the Agreement and settlement.

---

[1] Any terms not defined in this Memorandum are defined in the Parties' Agreement.
[2] The Net Settlement Amount means the Settlement Amount to be paid by Defendant pursuant to the Agreement less deductions for: (1) Court-approved attorneys' fees, costs, and expenses for Class Counsel; (2) any Court-approved Service Award to Skevington; and (3) Class Administrator costs.
[3] Defendant does not oppose this Motion to the extent it seeks certification of a class for settlement purposes only. Defendant denies all liability. The Parties' Agreement and settlement is conditioned on the Court's preliminary and final approval of the Agreement. Absent such approval, the Parties reserve their rights, including, but not limited to, Defendant's right to contest liability and class certification.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Skevington filed her Complaint on December 28, 2021 in the United States District Court for the Southern District of Indiana, Case No. 1:21-cv-03105-JPH-MG, alleging that Defendant violated the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, et seq. ("FLSA") and the Indiana Wage Payment Statute, I.C. § 22-2-5-2 ("IWPS") by failing to pay her and other similarly situated individuals in accordance with the FLSA and the IWPS. During the course of the litigation, the Parties in discovery and informally exchanged information regarding Hopebridge's timekeeping and wage payment practices affecting hourly-paid RBTs working for Hopebridge at different locations across the country. Once this information was provided, Plaintiff was capable of projecting the damages sought by the overall Rule 23 Class and each Rule 23 Class member, and, therefore, no additional discovery was necessary to evaluate the matter for settlement purposes. Although Hopebridge denies any liability, to avoid protracted litigation and expenses, the Parties, following arms-length settlement negotiations, reached a settlement.

The Parties' Agreement requires the certification of the following class under Federal Rule of Civil Procedure 23(b)(3) for settlement purposes only (i.e., the Rule 23 Class):

> All non-exempt, hourly-paid RBTs employed by Defendant at one or more of its locations in the United States at any time between December 28, 2019 and May 12, 2022.

Excluded from the Rule 23 Class are any persons who timely opt out of the Rule 23 Class. The Rule 23 Class also does not include any RBT who opted in as a plaintiff and is entitled to a recovery in the settlement reached in the earlier case titled *Ryan Myres et al. v. Hopebridge, LLC*, Case No. 2:20-cv-5390-EAS-KAJ ("*Myres*"), filed in the United States District Court for the Southern District of Ohio. The individuals who are excluded from the Rule 23 Class because

of their entitlement to a recovery in *Myres* are listed in Exhibit 1 to the *Myres* Collective Action Settlement Agreement and Release.

If the Agreement and settlement are approved, each Class Member who does not opt out of the settlement will receive an equal share of the Net Settlement Amount.

### III. LEGAL ARGUMENT

For purposes of this settlement, the Parties agree that the requirements for certification of a settlement class have been met.[4] The Agreement was negotiated at arms-length, and the terms are favorable to all Class Members when compared with the potential benefits and risks of further litigation. Indeed, the Parties participated in mediation before Magistrate Judge Mario Garcia on August 31, 2022, where the Parties reached an agreement. On September 27, 2022, the Parties also participated in mediation before former U.S. District Court Judge Richard McQuade in Columbus, Ohio with respect to the companion *Myres* litigation. At the close of mediation in the *Myres* matter, Hopebridge and the plaintiffs in *Myres* reached an agreement to increase the overall gross settlement with respect to the *Skevington* matter pending before this Court in exchange for a broader release of claims.

If the Court grants this Joint Motion, the Parties will seek a final order approving the settlement after the proposed Class Notice has been sent and the Rule 23 Class Members have had the opportunity to opt-out of or object to the Agreement and settlement.

**A. The Class Action Settlement Agreement Should be Given Preliminary Approval**

When parties seek preliminary approval of a class action settlement agreement, the court must decide "whether the proposed settlement is 'within the range of possible approval.'" *Chapman v. Bowman, Heintz, Boscia & Vician, P.C.*, No. 2:15-CV-120 JD, 2015 WL 9478548,

---

[4] Defendant reserves all rights to contest class certification in the event that the Agreement or settlement are not consummated or approved.

at *7 (N.D. Ind. Dec. 29, 2015) (quoting *Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980)). The settlement reached in this case is solidly within the "range of possible approval." *Id.*

Under Federal Rule of Civil Procedure 23(e)(2), the court may approve a class action settlement if "it is fair, reasonable, and adequate." As one district court within the Seventh Circuit recently articulated:

> In assessing a settlement's fairness, "relevant factors include: (1) the strength of the case for plaintiffs on the merits, balanced against the extent of the settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) [the] stage of the proceedings and the amount of discovery completed."

*In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*, MDL No. 2492, 2016 WL 305380, at *6 (N.D. Ill. Jan. 26, 2016) (quoting *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014)). Federal courts naturally favor the settlement of class action litigation. *See EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888–89 (7th Cir. 1985) (noting "the general policy favoring voluntary settlements of class action disputes"); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged."); *see also* William B. Rubenstein, 4 Newberg and Rubenstein On Class Actions § 13.1 (6th ed. 2022) (noting that there is a 'strong judicial policy in favor of class action settlement" (quoting *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010))); *id.* § 13.44 ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding lengthy trials and appeals. Settlement is generally favored because it represents a compromise reached between the parties to the suit and relieves them, as well as the judicial system, of the costs and burdens of further litigation." (footnote omitted)). Where "the

size of the class is small, the cost of notice minimal, and the issues discrete, the court may be able to determine that class certification is proper and the settlement is 'within the range of possible approval' with minimal fuss." *In re Nat'l Collegiate Athletic Ass'n*, 2016 WL 205380, at *6.

In the present case, the Agreement meets the fairness requirements for multiple reasons. First, prior to entering into the Agreement and settlement, the Parties engaged in discovery and in the informal exchange of information and were able to determine the scope of potential damages and assess the strengths and weaknesses of their respective positions. *See Chapman*, 2015 WL 9478548, at *7 (In granting preliminary approval of the settlement, the court noted that "[t]he litigation has been pending for six months, during which time, the parties were able to assess the strengths and weaknesses of their respective positions.").

The Parties concluded that potential class-wide damages were modest and the average Class Member had a claim worth significantly less than $50.00. The information exchanged to date was more than sufficient for the Parties to make informed decisions about the strengths and weaknesses of their respective positions, particularly regarding damages.

Second, this class is based upon claims under the IWPS and the FLSA. The Rule 23 Class Members here are being provided payment, even though these same Class Members did not choose to opt in and actively participate in the original *Myres* FLSA collective action lawsuit raising nearly identical claims.

Third, in light of the assessment of the strengths and weaknesses of their positions, the Agreement and settlement reached by the Parties provides a full recovery of class-wide unpaid wages during the two years prior to the filing of the lawsuit. The parties disagreed about the damages if the Plaintiff's claims were successful, but the sum paid by Defendant amounts to a

significant portion of the Class Members' alleged unpaid wages for this period. "Courts have approved settlements even though, unlike here, the benefits amounted to only a small percentage of the potential recovery." *Goldsmith v. Tech. Sols. Co.*, No. 92 C 4374, 1995 WL 17009594, at *5 (N.D. Ill. Oct. 10, 1995).

Fourth, all involved would benefit from settlement as it provides a means of avoiding the reality of protracted and uncertain litigation on the issues involved in this case. Preliminary approval of a settlement is an appropriate means of avoiding these uncertainties, especially where, as here, Defendant denies liability and the Parties disagree about the merits of the case. *See Chapman*, 2015 WL 9478548, at *7–8.

Finally, adding to the reasonableness of the settlement, and to quote from the Northern District of Indiana, "class members will obtain these benefits much more quickly than had the parties not settled," and "even if the case reached trial, the class members would not receive benefits for many years, if they received any at all." *Id.* at *7 (quoting *Swift v. DirectBuy, Inc.*, Nos. 2:11-cv-401, 2:11-cv-415, 2:11-cv-417, 2:12-cv-45, 2013 WL 5770633, at *5 (N.D. Ind. Oct. 24, 2013)). As such, the settlement here is fair, reasonable, and adequate, and preliminary approval is warranted.

### B. The Proposed Notice and Distribution Process are Appropriate.

The proposed Class Notice complies with due process and Federal Rule of Civil Procedure 23. Notice must provide:

> the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. . . . . The notice must clearly and concisely state in plain, easily understood language:
>
>     (i)    the nature of the action;
>     (ii)   the definition of the class certified;
>     (iii)  the class claims, issues, or defenses;

| | (iv) | that a class member may enter an appearance through an attorney if the member so desires; |
|---|---|---|
| | (v) | that the court will exclude from the class any member who requests exclusion; |
| | (vi) | the time and manner for requesting exclusion; and |
| | (vii) | the binding effect of a class judgment on members under Rule 23(c)(3). |

Fed. R. Civ. P. 23(c)(2)(B); *see also* Fed. R. Civ. P. 23(e)(1) (stating, in the context of a proposed settlement, that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal").

The Proposed Notice satisfies these requirements. Additionally, it describes the terms of the settlement and informs the class about the allocation and payment of attorneys' fees, costs, and expenses. Courts have approved class notices when they provide general information about a settlement. *See McCue v. MB Fin., Inc.*, 1:15-cv-00988, 2015 WL 1020348, at *4 (N.D. Ill. Mar. 6, 2015) (finding proposed notice "appropriate because it describes the terms of the settlement, informs the class about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing"); *see also In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) ("Normally, settlement notices need only describe the terms of the settlement generally."). The information provided in the proposed Class Notice exceeds this bare minimum and, thus, fully complies with the requirements of Rule 23(c)(2)(B) and Rule 23(e)(1).

### *IV. CONCLUSION*

For the reasons set forth above, the Parties request that the Court grant their Joint Motion and issue the proposed Preliminary Approval Order, which (1) sets forth the findings required by Federal Rule of Civil Procedure 23(a) and 23(b)(3), (2) grants provisional certification of the Rule 23 Class pursuant to Federal Rule of Civil Procedure 23(b)(3) and preliminary approval of

the Agreement and settlement, (3) approves the proposed Class Notice and authorizes the mailing of the Class Notice to the Rule 23 Class Members, (4) appoints Class Counsel, and (5) schedules a Fairness Hearing for final approval of the Agreement and settlement.

Dated: May 16, 2023

Respectfully submitted,

/s/ Robert P. Kondras, Jr.
Robert P. Kondras, Jr., #18038-84
HASSLER KONDRAS MILLER LLP
100 Cherry Street
Terre Haute, IN 47807
(812) 232-9691
(812) 234-2881 Facsimile
kondras@hkmlawfirm.com

ATTORNEY FOR PLAINTIFF

/s/Erica Knear (with consent)
Erica Knear #35028-53
Taft Stettinius & Hollister LLP
One Indiana Square, Suite 3500
Indianapolis, IN 46204
Telephone: (317) 713-3500
Facsimile: (317) 713-3699
eknear@taftlaw.com

Pamela S. Krivda (*pro hac vice*)
(OH Bar # 0041133)
Janica Pierce Tucker (*pro hac vice*)
(OH Bar # 0075074)
Jonathan N. Olivito (*pro hac vice*)
(OH Bar # 0092169)
Taft Stettinius & Hollister LLP
41 S. High Street, Suite 1800
Columbus, OH 43215
Telephone: (614) 221-2838
Facsimile: (614) 221-2007
pkrivda@taftlaw.com
jpierce@taftlaw.com
jolivito@taftlaw.com

ATTORNEYS FOR DEFENDANT

**CERTIFICATE OF SERVICE**

      I hereby certify that on May 16, 2023 a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's filing system. Parties may access this filing through the Court's system.

                                    /s/Robert P. Kondras, Jr.
                                    Robert P. Kondras, Jr.