UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

JACQUELINE SKEVINGTON,          )
                                )
                Plaintiff,      )
                                )
        v.                      )        No. 1:21-cv-03105-JPH-MG
                                )
HOPEBRIDGE, LLC,                )
                                )
                Defendant.      )

**ORDER ON JOINT MOTION FOR PRELIMINARY APPROVAL OF REVISED
SETTLEMENT AGREEMENT AND OTHER ISSUES**

Plaintiff Jacqueline Skevington brought this suit on behalf of herself and

those similarly situated, alleging that Hopebridge, LLC, violated the Fair Labor

Standards Act (FLSA) and the Indiana Wage Payment Statute (IWPS) by failing

to properly pay its Registered Behavioral Technicians (RBT) for short breaks

that they took throughout the day.  The parties have filed a joint motion asking

the Court to: provisionally certify the Rule 23 Class for settlement purposes

only pursuant to Federal Rule of Civil Procedure 23(b)(3); provisionally certify

the FLSA Collective for settlement purposes only pursuant to 29 U.S.C. §

216(b); preliminarily approve the Settlement and Revised Class Action

Settlement Agreement and Release ("Revised Agreement"); appoint Plaintiff's

counsel as Class/Collective Counsel; approve the proposed Notice of

Class/Collective Action Settlement and Fairness Hearing ("Settlement Notice");

and schedule the Fairness Hearing for the final approval of the Revised

Agreement.  Dkt. 37. Having considered the joint motion, notice, and the

supporting materials, the Court **GRANTS** the joint motion but **ORDERS the**

1

**parties to submit by April 15, 2024**, a supplemental filing addressing the impact of the reversion and "clear sailing" provisions on the fairness of the Revised Agreement.  Dkt. [37].

## I.
## Background

The parties originally filed a motion for preliminary approval of their class action settlement in May 2023.  Dkt. 33. The Court denied that motion as presented because: (1) the class resolved the FLSA claims through an opt-out release instead of the statutorily required opt-in procedure; (2) the brief did not analyze whether the proposed class met the Rule 23(a) or 23(b)(3) factors; and (3) the parties did make a modest factual showing that Ms. Skevington and the FLSA collective action members were victims of a common plan or policy. Dkt. 36.

In November, the parties submitted a revised joint motion to certify a class action and FLSA collective.  Dkt. 37. The parties attached the Revised Agreement, dkt. 37-1, and the Class Action and Collective Action Notice of Settlement, dkt. 37-2.  The Revised Agreement would settle Plaintiff's individual and class/collective claims under the Indiana Wage Payment Statute, I.C. § 22-2-5-2 ("IWPS") and the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, *et seq.* ("FLSA").  For the IWPS claims, Rule 23 Class Members can choose to opt out of the class action portion of the Settlement. For the FLSA claims, by contrast, putative members of the FLSA Collective would have to opt into the FLSA portion of the Settlement.  Dkt. 37-1 at 15–16 §§ 5.1, 5.4.

The proposed settlement class/collective includes:

2

All non-exempt, hourly-paid RBTs employed by Hopebridge, LLC at one or more of its locations in the United States at any time between December 28, 2019 and May 12, 2022.

Dkt. 37-1 at 4 (Revised Agreement §§ 1.15, 1.33). The class/collective action excludes any RBT who opted in as a plaintiff and is entitled to a recovery in the settlement reached in *Myres et al. v. Hopebridge, LLC*, Case No. 2:20-cv-5390-EAS-KAJ ("*Myres*"), filed in the United States District Court for the Southern District of Ohio. The individuals who are excluded from the Class because of their entitlement to a recovery in *Myres* are listed in Exhibit 1 to the *Myres* Collective Action Settlement Agreement and Release. *Id.*

In the Revised Agreement, Hopebridge agrees to pay $326,493 to resolve this lawsuit without admitting any liability or wrongdoing. Dkt. 37-1 at 10, § 4.1. Class/Collective Counsel agrees to petition for a attorneys' fee award of no more than $78,666.67. *Id.* at 10, § 4.2. Defendant agrees to not oppose the request for attorneys' fees. *Id.* The Revised Agreement also contemplates a $5,000 service award to named Plaintiff Skevington. *Id.* at 11, § 4.3. After these costs and the Settlement Administrator's costs are deducted, the remaining amount will be split 80% to the Class and 20% to the FLSA Collective, with each of those percentages equally divided among the Class and FLSA Collective members, respectively. *Id.* at 11, § 4.5. If a class member opts out of the class action or if a FLSA Collective member does not opt into the FLSA Collective, their share will revert to Hopebridge. *Id.* at 14 § 4.7(g). The parties state that there likely are approximately 6,360 putative members in the Class and Collective, and that each member likely has a maximum unpaid

wage claim that is "far less than $50 per Class/Collective Member."  Dkt. 38 at 2; 38-1 ¶ 14.

In return for payment, the Class members agree to release "all wage and hour claims" under "IWPS, Article II, § 34a of the Ohio Constitution, or any other applicable federal, state, or local wage and hour law, regulation, or rule (with the exception of the FLSA) . . . and any claims for liquidated damages, punitive damages, attorneys' fees, costs, expenses, penalties, interest, settlement administration costs, and/or service awards based on and/or relating to any of the allegations asserted in this Litigation or *Myres*."  Dkt. 37-1 at 21–22, § 9.2.  FLSA Collective Members agree to release "all claims under the FLSA . . . relating to unpaid and/or untimely payment of wages, overtime, or compensation of any kind, any related equitable claims, and any claims for liquidated damages, punitive damages, attorneys' fees, costs, expenses, penalties, interest, settlement administration costs, and/or service awards based on and/or relating to any of the allegations asserted in this Litigation or *Myres*."  *Id.* at 22, § 9.3.

## II.
## Applicable Law
### A. Rule 23 Class Action

Class actions were designed as "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 155 (1982). "Federal Rule of Civil Procedure 23 governs class actions."  *Santiago v. City of Chicago*, 19 F.4th 1010, 1016 (7th Cir. 2021). "Rule 23 gives the district courts broad discretion

to determine whether certification of a class-action lawsuit is appropriate," *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008), and "provides a one-size-fits-all formula for deciding the class-action question," *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 399 (2010).

A court's approval is required when "a class [is] proposed to be certified for the purposes of settlement."  Also, courts must direct notice of a settlement class "in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e).  A court is authorized to direct notice only if the court "will likely be able to (i) approve the proposal under 23(e)(2); and (ii) certify the class for purposes of the judgment on the proposal."  Fed. R. Civ. P. 23(e)(1)(B).  Rule 23(e)(2) requires that a Court determine the settlement is "fair reasonable, and adequate" before approving a binding class settlement.  *See also Wong v. Accretive Health, Inc.*, 773 F.3d 859, 862 (7th Cir. 2014). The Court's notice must meet the requirements of Rule 23(c)(2)(B).

 "Rule 23(a) enumerates four—and only four—requirements for class certification: numerosity, commonality, typicality, and adequacy of representation." *Simpson v. Dart*, 23 F.4th 706, 711 (7th Cir. 2022). In addition to those "prerequisites," the class must fit one of Rule 23(b)'s "particular types of classes, which have different criteria." *Santiago*, 19 F.4th at 1016. Here, the parties seek class certification under Rule 23(b)(3), dkt. 38 at 2, so "common questions of law or fact must predominate over individual inquiries, and class treatment must be the superior method of resolving the controversy," *Santiago*, 19 F.4th at 1016.

"A class may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites for class certification have been met." *Santiago*, 19 F.4th at 1016.   When parties seek class certification as part of a settlement, the provisions of Rule 23 "designed to protect absentees by blocking unwarranted or overbroad class definitions . . . demand undiluted, even heightened, attention." *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997).

**B. FLSA Collective Action**

Violations of the FLSA can be brought as a collective action on behalf of the plaintiff and "other employees similarly situated." 29 U.S.C. § 216(b); *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013). "A district court has wide discretion to manage collective actions."  *Alvarez v. City of Chicago*, 605 F.3d 445, 449 (7th Cir. 2010).  While it's not mandatory, courts in the Southern District and Seventh Circuit commonly employ a two-step test to evaluate whether FLSA collective action status is appropriate.  *In re New Albertsons, Inc.*, No. 21-2577, 2021 WL 4028428, at *1 (7th Cir. Sept. 1, 2021); *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1049 n. 5 (7th Cir. 2020); *Adams v. Aztar Indiana Gaming Co., LLC*, 587 F. Supp. 3d 753, 759 (S.D. Ind. 2022). First, there must be a "modest factual showing sufficient to demonstrate that [the collective representative] and potential plaintiffs together were victims of a common policy or plan that violated the law."  *In re New Albertsons, Inc.*, 2021 WL 4028428, at *1.  If the court finds that this showing has been made, it may then "conditionally certify the suit as a collective action and allow the plaintiffs

to send notice of the case to similarly situated employees who may then opt in as plaintiffs." *Id.*

"The Seventh Circuit has not addressed the question of whether stipulated agreements under the FLSA require court approval, but district courts in the Seventh Circuit" as well as other federal circuit courts "routinely require such approval." *Mollett v. Kohl's Corp.*, No. 21-CV-707-PP, 2022 WL 4641082, at *2 (E.D. Wis. Sept. 30, 2022); *see e.g., Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982). A court will approve a FLSA settlement if "reached as a result of contested litigation to resolve bona fide disputes." *Briggs v. PNC Fin. Servs. Grp., Inc.*, No. 1:15-CV-10447, 2016 WL 7018566, at *1 (N.D. Ill. Nov. 29, 2016); *see also Lynn's Food Stores, Inc.*, 679 F.2d at 1352; *Adams v. Aztar Indiana Gaming Co., LLC*, No. 3:20-CV-00143-MPB-RLY, 2023 WL 2197075, at *4 (S.D. Ind. Feb. 24, 2023), *amended*, No. 3:20-CV-00143-MPB-MJD, 2023 WL 6536777 (S.D. Ind. Apr. 4, 2023). If the FLSA settlement reflects a "reasonable compromise over contested issues, the court should approve the settlement." *Briggs*, 2016 WL 7018566, at *1 (citing *Dawson v. Pastrick*, 600 F.2d 70, 75 (7th Cir. 1979) ("It is a well settled principle that the law generally encourages settlements.")).

### III.
### Analysis
**A. Rule 23 Class Certification**

#### 1. Rule 23(a) and Rule 23(b)(3)

The parties have shown that the Rule 23(a) and (b)(3) requirements have been met.

First, there are over 6,000 potential class members, thereby satisfying the requirement of numerosity.  Dkt. 38 at 2; *see Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 860 (7th Cir. 2017) ("While there is no magic number that applies to every case, a forty-member class is often regarded as sufficient to meet the numerosity requirement.").  Next, Ms. Skevington's claim—"that every unpaid break of 20 minutes. . . must be paid, and states a violation of the IWPS"—satisfies the typicality requirements as discovery has revealed that that her claim is typical of the claims other members would assert, and the defense to each claim would be the same.  Dkt. 38 at 13; *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (explaining that typicality is satisfied when "the named representatives' claims have the same essential characteristics as the claims of the class at large").  Third, Ms. Skevington satisfies the adequacy of representation requirement.  Dkt. 38 at 14–15; *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1027 (7th Cir. 2018) ("A named plaintiff must be a member of the putative class and have the same interest and injury as other members").  Ms. Skevington's claims are not antagonistic to the class; they are in fact typical, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997) ("adequacy-of-representation requirement 'tend[s] to merge' with . . . the commonality and typicality criteria"), and she has sufficient interest in the outcome of litigation.  Dkt. 38 at 14.

The parties have also shown that certification of this class is proper under Federal Rule of Civil Procedure 23(b)(3), which requires that "the questions of law or fact common to class members predominate over any

questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Both commonality and predominance are met because the common question—whether Hopebridge's practice of failing to compensate RBTs for short breaks violated the IWPS—is "a significant aspect of the case and . . . can be resolved for all members of the class in a single adjudication." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 814 (7th Cir. 2012) (quoting 7AA Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1778 (3d ed. 2011)); dkt. 38 at 16–17. And given the relatively small amount to which each member would be entitled as well as "the factual and legal uniformity of the Class/Collective Members' claims," a class action is superior method for resolving these claims. Dkt. 38 at 17–18. *See also Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.").

Thus, the class is preliminarily certified under Rule 23(b)(3).

### 2. Rule 23(e)(2)

Courts may approve a proposed settlement only after finding that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To make that finding, Courts must consider whether (1) the class representatives and class counsel have adequately represented the class, (2) the proposal was negotiated

at arm's length, (3) the proposal treats class members equitably relative to each other, and (4) the relief provided by the settlement is adequate. *Id.*; *Wong*, 773 F.3d at 863 (discussing relevant factors for evaluating the fairness of a class action settlement).

It appears that plaintiffs' counsel has relevant experience, sufficient resources, and has already devoted significant time to the investigation of the claims in this case. Dkt. 38 at 14–15; Dkt. 38-1 ¶¶ 6 –10.

Prior to filing the Revised Agreement, the parties conducted "discovery and further informal exchange of wage and time clock data about the class claims, including the exchange of relevant documents." Dkt. 38-1 at 5, ¶ 11; dkt. 38 at 8. Based on this information, the parties were able to evaluate potential damages and assess the strengths and weaknesses of their positions. Dkt. 38 at 8. The Revised Agreement provides for the recovery of "a significant portion of the Class/Collective Members' alleged unpaid wages" for the two years prior to the filing of the lawsuit. *Id.* at 9.

The parties reached the terms of the Revised Settlement following a mediation conducted by the Magistrate Judge assigned to this case and a mediation regarding the *Myres* case that was conducted by former U.S. District Court Judge Richard McQuade in Ohio. Dkt. 38 at 5. At the close of the mediation related to *Myres*, the parties agreed to "increase the overall gross settlement with respect to [this case] in exchange for a broader release of claims." *Id.* at 6.

Based on their joint assessment of the case, the parties concluded the amount on average each class/collective member would be entitled to was worth "significantly less than $50.00." *Id.* at 8. This appears reasonable given that the breaks at issue are less than twenty minutes. Moreover, Plaintiffs' counsel attests in an affidavit that "data showed that the average RBT has a maximum unpaid wage claims that is small, likely far less than $50 per class member." Dkt. 38-1 at 7, ¶ 14

If there is complete participation in both the Class Action and the FLSA Collective, the approximately 6,360 class members would receive about $38.17 minus settlement administration costs, signaling that relief is likely adequate.[1] Fed. R. Civ. P. 23(e)(2)(C).

The Revised Settlement appears to treat class members equitably relative to each other. Although the settlement formula does not account for differences in lost wages between individuals, there are countervailing factors that the parties have considered. Specifically, the parties state that pro rata distribution is preferable to individualized damage determinations in order to avoid the additional expense of calculating damages specific to each class member. Dkt. 38-1 ¶ 14; *Berglund v. Matthews Senior Hous. LLC*, No. 21-CV-

---

[1] This figure is calculated by applying the Settlement Agreement's formula to the total amount of funds available for distribution. $242,826.33 is the amount available, calculated by subtracting $83,666.67 (attorneys' fees plus class representative award) from $326,493.00 (settlement amount). $242,826.33 is then allocated between the Class and FLSA Collective Action pursuant to the Settlement Agreement's 80/20 formula and divided by the 6,360 RBTs eligible to participate in the settlement. This results in $30.54 per class member and $7.64 per FLSA collective member. The Court recognizes this does not take into account the reduction of reasonable expenses and costs of Counsel and the Settlement Administrator.

108-PP, 2023 WL 6847696, at *5 (E.D. Wis. Oct. 17, 2023) (approving a class and collective settlement for representative amounts of overtime wages).

Yet there are features of the Revised Agreement that give the Court pause regarding the fairness of the settlement.  *See Reynolds v. Beneficial Nat. Bank,* 288 F.3d 277, 279–80 (7th Cir. 2002) (explaining that district judges are required "to exercise the highest degree of vigilance in scrutinizing proposed settlements of class actions.").  The Revised Agreement has both a "clear sailing" clause—in which the Defendant agrees not to contest the plaintiffs' counsel's motion for attorneys' fees—and a reversion clause—which reverts the funds of any non-participating class or collective member back to Hopebridge. Dkt 37-1 at 10–11, 14 §§ 4.2 and 4.7(g).  Although the presence of these provisions does not preclude the Court from approving the Revised Agreement, their presence "weigh[s] substantially against the fairness of a settlement and call for 'intense critical scrutiny by the district court.'"  *In re Sw. Airlines Voucher Litig.*, 799 F.3d 701, 712 (7th Cir. 2015) (quoting *Redman v. RadioShack Corp.*, 768 F.3d 622, 637 (7th Cir. 2014)).

Here, the reversion clause affects the value of the settlement to the class members as well as the Court's evaluation of the fairness of attorneys' fees. *See* Fed. R. Civ. P. 23(e)(1)(B); 23(e)(2).  The Revised Agreement contemplates an attorneys' fee award of no more than $78,666.67.  *Id.* at 10, § 4.2.  This award would be approximately 24% of the total settlement (before subtracting payment of the settlement administrator and reimbursement of costs and expenses to Counsel) *if* there is 100% participation in the Class Action and the

12

Collective Action.  But the actual ratio of fees to class member recovery will depend on the number of collective members who opt-in and the number of class action members who opt-out.  In evaluating the fairness of the Revised Agreement, the Court must consider "*the value of the settlement to the class* and the reasonableness of the agreed-upon attorneys' fees for class counsel". *Redman*, 768 F.3d at 629 (emphasis added).

In *In re Sw. Airlines Voucher Litig.*, the Seventh Circuit explained that the presence of a "kicker" clause[2] and a clear-sailing clause in the settlement agreement called for intense judicial scrutiny and weighed against a finding of fairness.  799 F.3d at 713.  The court nonetheless affirmed the district court's approval of the coupon settlement agreement relying principally upon the fact that the settlement would make the class whole and the district court had scrutinized, and then reduced, the attorneys' fee request.  *Id.*  Here, the Revised Agreement contains a reversion provision and a "clear sailing provision" and may not make every class member whole. As discussed above, however, there are numerous factors showing that the Revised Agreement is nonetheless likely a fair resolution.

Based on the reasons the parties have provided regarding the settlement's fairness and the Court's ability to reduce attorneys' fees if appropriate depending on the actual value provided to the class, the Court preliminarily approves the Revised Agreement.  If the Court concludes after

---

[2] A kicker clause causes any reduction of the attorneys' fee award to revert to the Defendant instead of the class.

careful scrutiny that the Revised Agreement is "fair reasonable, and adequate", Fed. R. Civ. P. 23(e)(2), it may finally approve the Revised Settlement after the final fairness hearing despite the presence of the "clear sailing" and reversion provisions. *In re Sw. Airlines Voucher Litig.*, 799 F.3d at 712.

To provide the Court with "sufficient information to make a judgment" on the reasonableness of the Revised Agreement, *Reynolds*, 288 F.3d at 280, the Court **ORDERS the parties to submit by April 15, 2024,** a supplemental memorandum in support of their joint motion for preliminary approval that addresses why the Revised Agreement is fair under Rule 23(e)(2) despite the presence of the "clear sailing" and reversion provisions.

### 3. Sufficient class notice

Finally, the Settlement Notice is sufficient and complies with Federal Rule of Civil Procedure 23(c)(2)(B). Dkt. 37-2. The settlement administrator will mail notices to the class and collective members based on the Company's records. Dkt. 37-1 at 17, § 6.2. Additionally, the notice explains:

(i)     the nature of the action, 37-2 at 2;

(ii)    the definition of the class certified, *id.* at 1;

(iii)   the class claims, issues, or defenses, *id.* at 2;

(iv)    that a class member may enter an appearance through an attorney if the member so desires, *id.* at 8;

(v)     that the court will exclude from the class any member who requests exclusion, *id.* at 5;

(vi)    the time and manner for requesting exclusion, *id.* at 5–6,

(vii)   the binding effect of a class judgment on members under Rule 23(c)(3), *id.* at 6.

## B. FLSA subclass

### 1. Statutory requirements

The parties have made the showing required to satisfy the first step of the test "commonly employ[ed]" in this district "to determine whether an FLSA lawsuit should proceed as a collective action." *Adams*, 587 F. Supp. 3d at 759. "All settlement class members were subject to common policy whereby Hopebridge was treating recorded breaks of 20 minutes or less as unpaid time." Dkt. 38-1 ¶ 14 (Kondras Decl.)  This satisfies the requirement of a "modest factual showing" that "demonstrate[s] that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Adams*, 587 F. Supp. 3d at 759 (quoting *In re New Albertsons, Inc.*, 2021 WL 4028428, at *1).

### 2. Fairness evaluation

Courts should approve FLSA settlements that represent a "reasonable compromise" over a "bona fide dispute." *Briggs*, 2016 WL 7018566, at *1. Here, there is a bona fide dispute since the parties dispute the case both factually and legally.  *See* Dkt. 38 at 9 (Hopebridge denies liability and the Parties disagree about the merits of the case).  *See also* Dkt. 15 at 4, 10–11 (denying that RBTs were subject to a policy of not compensating breaks regardless of duration and asserting defenses).  The parties have engaged in "discovery and in the informal exchange of information and were able to determine the scope of potential damages and assess the strengths and weaknesses of their

respective positions." Dkt. 38 at 8.  This process gave the parties sufficient information to meaningfully evaluate the relative strengths and weaknesses of their positions and reach this settlement.  Dkt. 38 at 8–9.  Therefore, the FLSA collective action subclass appears to be a reasonable resolution of the settlement, *Briggs*, 2016 WL 7018566, at *1.[3]

## IV.
## Approval of Proposed Class Action Settlement and Notice

The Court preliminarily approves the Revised Agreement and settlement as within the range of possible approval and as fair.  Dkt. 38; *see Armstrong v. Bd. of Sch. Dirs. of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980).  Such preliminary approval is without prejudice to the Court's final decision on the Parties' Motion for Final Approval after notice and the Fairness Hearing.

For the sole purpose of administering the proposed settlement reflected in the Revised Agreement, the Court provisionally certifies the following class under Federal Rule of Civil Procedure 23(b)(3) and collective under FLSA:

> All non-exempt, hourly-paid RBTs employed by Hopebridge, LLC at one or more of its locations in the United States at any time between December 28, 2019 and May 12, 2022.

Excluded from the Rule 23 Class are any persons who timely opt out of the Rule 23 Class.  The FLSA Collective only includes those persons who timely and properly opt into the FLSA Collective.  Also excluded from the Rule 23 Class and FLSA Collective are any RBT who opted in as a plaintiff and is entitled to a recovery in the settlement reached in *Myres.*  The individuals who

---

[3] This is subject to consideration of additional information regarding the reversion and "clear sailing" provisions discussed in Section III.A.2

are excluded from the Rule 23 Class and FLSA Collective because of their

entitlement to a recovery in *Myres* are listed in Exhibit 1 to the *Myres* Collective

Action Settlement Agreement and Release.

Rule 23(g)(1) requires that the court appoint class counsel after it

certifies a class.  In appointing class counsel, the court must consider:

> (i) the work counsel has done in identifying or
> investigating potential claims in the action;
> (ii) counsel's experience in handling class actions, other
> complex litigation, and the types of claims asserted in
> the action;
> (iii) counsel's knowledge of the applicable law; and
> (iv) the resources that counsel will commit to
> representing the class.

Fed R. Civ. P. 23(g)(1)(A).  Given Plaintiffs' counsel's extensive experience with

class and collective wage actions in Indiana, the resources that these attorneys

bring to this action, and the work they have already done investigating these

claims, dkt. 38 at 14–15 and dkt. 38-1 ¶¶ 3–10, the Court designates the

following counsel for the preliminarily-certified Class and Collective Action:

Robert P. Kondras, Jr.
HASSLER KONDRAS MILLER LLP
100 Cherry Street
Terre Haute, IN 47807
(812) 232-9691
kondras@hkmlawfirm.com

Daniel Bryant
Bryant Legal, LLC
1550 Old Henderson Road
Suite 126
Columbus, OH 43220
dbryant@bryantlegalllc.com

Matthew Coffman
COFFMAN LEGAL, LLC
1550 Old Henderson Rd
Ste. 126
Columbus, OH 43220
mcoffman@mcoffmanlegal.com

Additionally, the Court appoints Plaintiff Jacqueline Skevington as the class/collective representative.

The Settlement Notice, in the form attached to the Revised Agreement with one revision,[4] and the manner of mailing and distribution of the Settlement Notice, as also set forth in the Revised Agreement, are hereby approved by the Court as the best notice practicable to all members of the Rule 23 Class and FLSA Collective who can be identified through reasonable effort, subject to the method of filing objections. The Settlement Notice is timely, accurate, and informative. And the form and manner of notice comply with the requirements of due process and the standards of Rule 23 and the FLSA.  The Settlement Administrator should mail notice **no later than forty (40) days** from the date of this order.

Pursuant to Federal Rule of Civil Procedure 23(e)(2), a final approval hearing ("Fairness Hearing") shall be held before the undersigned **on June 25, 2024, at 9:30 a.m. in Courtroom 329 of the Birch Bayh Federal Building & U.S. Courthouse, 46 East Ohio Street, Indianapolis, Indiana 46204**, for the purpose of considering: (1) the fairness, reasonableness, and adequacy of the

---

[4] Based on this order, the notice should be amended to remove the requirement that the objection be "accompanied by any evidence, briefs, motions, or other materials you intend to offer in support of your objection." Dkt. 37-2 at 7. Similarly, this requirement also should be removed from the section of the notice regarding intervention as well.  *Id.*

Revised Agreement and settlement, and whether the Revised Agreement and settlement should be finally approved and all claims in this action against Defendant dismissed with prejudice and without costs; (2) the proposed Service Award for Skevington; and (3) Class/Collective Counsel's application for an award of attorneys' fees, costs, and expenses.

**By Monday, April 15, 2024**, the Parties shall file a Motion for Approval of Attorneys' Fees, Costs, and Expenses (along with any supporting materials) to be paid from the Settlement Amount, as contemplated by the terms of the Revised Agreement.  The parties should include notice of the class counsel's fee motion along with the notice about the settlement proposal. *See* Fed. R. Civ. P. 23(h)(1) ("Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner."); Fed. R. Civ. P. 23 advisory committee's note to 2003 amendment ("When a settlement is proposed for Rule 23(e) approval, either after certification or with a request for certification, notice to class members about class counsel's fee motion would ordinarily accompany the notice to the class about the settlement proposal itself.").

Members of the Rule 23 Class shall be afforded an opportunity to opt out of the Rule 23 Class.  Those members who submit a valid request to opt out of the Rule 23 Class in accordance with the terms and requirements of the Revised Agreement and Class Notice no later than **Friday, May 31, 2024,** shall not be bound by the Revised Agreement.  Members of the Rule 23 Class who do not validly opt out of the Rule 23 Class shall be bound by the Revised

Agreement, settlement, and all determinations and judgments in the action, whether favorable or unfavorable.

Putative members of the provisionally certified FLSA Collective shall be afforded an opportunity to opt into the FLSA Collective. Those persons who submit a valid Opt-In Form to opt into the FLSA Collective in accordance with the terms and requirements of the Revised Agreement and Settlement Notice no later than **Friday, May 31, 2024,** shall become part of the FLSA Collective and shall be bound by the Revised Agreement, settlement, and all determinations and judgments in the action, whether favorable or unfavorable.

Members of the Rule 23 Class who have not opted out and members of the FLSA collective who have opted in shall be afforded an opportunity to object to the terms of the Revised Agreement. Any objection must: (i) be made in writing; (ii) contain the full name and current address of the person making the objection; (iii) contain the title of the lawsuit, "Jacqueline Skevington v. Hopebridge, LLC"; (iv) state the reason for the objection; (v) be signed by the objector; and (vi) be sent by mail to the Court, Class/Collective Counsel, and Defendant's Counsel, with a postmark no later than **Friday, May 31, 2024**. Any member of the Rule 23 Class or FLSA Collective who does not timely object in the manner provided in this Order shall be deemed to have waived such objection and shall be foreclosed from making any objection to the fairness, reasonableness, or adequacy of the Revised Agreement and settlement.

Any request for intervention in this action for purposes of commenting on or objecting to the Revised Agreement or settlement must meet the

requirements set forth above for filing objections and meet the requirements of the Federal Rules of Civil Procedure.

Any lawyer intending to appear at the Fairness Hearing on behalf of any Class/Collective Member must be admitted, permanently or *pro hac vice*, to practice before this Court and must file a written appearance no later than **Tuesday, June 4, 2024**. Copies of the appearance must be served on Class/Collective Counsel and Defendant's Counsel in accordance with the Federal Rules of Civil Procedure.

**By Tuesday, June 11, 2024**, the Parties shall file a Motion for Final Approval along with a Notice of Class Action Opt-Outs and Collective Action Opt-ins, listing the names of (a) all persons who submitted an opt-out request and (b) all persons who submitted a request to opt into the FLSA Collective. Either of the Parties may file a response to any objection or motion to intervene filed by a Class/Collective Member by **Tuesday, June 18, 2024**.

If Final Approval of the Revised Agreement and settlement is not achieved, or if the Revised Agreement or settlement is terminated for any reason whatsoever, all proceedings and filings in connection with the Revised Agreement and settlement shall be without prejudice to the status quo ante rights of the Parties in this action, and all orders issued pursuant to the Revised Agreement and settlement shall be vacated.

The Court may adjourn or change the date and/or time of the Fairness Hearing without further notice to the members of the Rule 23 Class or the FLSA Collective.

**SO ORDERED.**

Date: 3/18/2024

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel