UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JACQUELINE SKEVINGTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:21-cv-03105-JPH-MG |
| | ) |
| HOPEBRIDGE, LLC, | ) |
| | ) |
| Defendant. | ) |

**FINAL CLASS SETTLEMENT APPROVAL ORDER**

Plaintiff Jacqueline Skevington brought this suit on behalf of herself and those similarly situated, alleging that Hopebridge, LLC, violated the Fair Labor Standards Act (FLSA) and the Indiana Wage Payment Statute (IWPS) by failing to properly pay its Registered Behavioral Technicians (RBT) for short breaks that they took throughout the day.  The parties have asked the Court for final approval of the Revised Class Action Settlement Agreement and Release, dkt. 59, and to award attorney's fees, dkt. 46.  The Court has considered the arguments presented at the June 25, 2024, Fairness Hearing and the filings submitted in support of approval, dkts. 45, 47, and 59.  The Court has also considered the Objection to the Notice of Proposed Settlement of Class and Collective Action filed by Ms. Cassandra Thomas, dkt. 57. For the reasons set forth below, the Court **GRANTS** the Motion for Final Approval, dkt. [59] and the Motion for Attorney's Fees, dkt. [46], and **APPROVES** the settlement agreement.

1

# I.
# Background

Ms. Skevington, who was employed by Hopebridge, LLC, as a registered behavior technician (RBT), brought this lawsuit alleging that Hopebridge violated the Fair Labor Standards Act (FLSA) and the Indiana Wage Payment Statute (IWPS) by failing to properly pay RBTs for short breaks that they took throughout the day. Dkt. 1.

The Court preliminarily certified the settlement class action and FLSA collective, and approved the notice and the procedure for notice to potential Class/Collective members. Dkt. 42 (Preliminary Approval Order).[1]

The preliminarily certified settlement Class/Collective includes:

> All non-exempt, hourly-paid RBTs employed by Hopebridge, LLC at one or more of its locations in the United States at any time between December 28, 2019 and May 12, 2022.

The Class/Collective excludes any RBT who opted in as a plaintiff and is entitled to a recovery in the settlement reached in *Myres v. Hopebridge*, Case No. 2:20-cv-5390-EAS-KAJ, filed in the United States District Court for the Southern District of Ohio. The individuals who are excluded from the Class because of their entitlement to a recovery in *Myres* are listed in Exhibit 1 to the *Myres* Collective Action Settlement Agreement and Release. *Myres v. Hopebridge*, Case No. 2:20-cv-5390-EAS-KAJ, dkt. 71-1 at 26–35

To settle the claims in this case, Hopebridge agreed to pay $326,493. Dkt. 37-1 at 10, § 4.1 (Settlement Agreement). The parties propose to deduct

---

[1] The court adopts and incorporates by reference the analysis and findings set forth in the Preliminary Approval Order, dkt. 42.

the following from that amount: a $5,000 service award to Ms. Skevington, dkt. 37-1 at 11, § 4.3; $78,666.67 in fees, costs, and expenses to Class/Collective Counsel, dkt. 59 at 2; and $25,000 in costs to the settlement administrator, dkt. 46.  Pursuant to the Settlement Agreement, the remaining amount will be split 80% to the Class and 20% to the FLSA Collective, with each of those percentage amounts divided among the Class and FLSA Collective members, respectively.  Dkt. 37-1 at 11, § 4.5.  If a class member opts out of the Class or if a FLSA Collective member does not opt into the FLSA Collective, their share will revert to Hopebridge. *Id.* at 14 § 4.7(g).

The parties confirmed at the June 24, 2024, fairness hearing that six class members opted out and 586 collective members opted-in.

## II.
## Legal Standard

Class actions were designed as "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 155 (1987) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700 (1979)); *see also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 832 (1999) ("In drafting Rule 23(b), the Advisory Committee sought to catalogue in functional terms those recurrent life patterns which call for mass litigation through representative parties.").

Any settlement that results in the dismissal of a class action requires court approval. *See* Fed. R. Civ. P. 23(e); *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279 (7th Cir. 2002).  After preliminary review and a hearing, a "district court may approve a settlement of a class action if it concludes that it

3

is 'fair, reasonable, and adequate.'" *Kaufman v. Am. Express Travel*, 877 F.3d 276, 283 (7th Cir. 2017) (quoting Fed. R. Civ. P. 23(e)(2)). "[D]istrict courts should act as the 'fiduciary of the class,' subject to the high duty of care that the law requires of fiduciaries." *Id.*

A court will approve a FLSA settlement if "reached as a result of contested litigation to resolve bona fide disputes." *Briggs v. PNC Fin. Servs. Grp., Inc.*, No. 1:15-CV-10447, 2016 WL 7018566, at *1 (N.D. Ill. Nov. 29, 2016); *see also Lynn's Food Stores, Inc.*, 679 F.2d at 1352; *Adams v. Aztar Indiana Gaming Co.*, LLC, No. 3:20-CV00143-MPB-RLY, 2023 WL 2197075, at *4 (S.D. Ind. Feb. 24, 2023), *amended*, No. 3:20-CV-00143-MPB-MJD, 2023 WL 6536777 (S.D. Ind. Apr. 4, 2023). If the FLSA settlement reflects a "reasonable compromise over contested issues, the court should approve the settlement." *Briggs*, 2016 WL 7018566, at *1 (citing *Dawson v. Pastrick*, 600 F.2d 70, 75 (7th Cir. 1979) ("It is a well settled principle that the law generally encourages settlements.")).

### III.
### Analysis

#### A. Class Certification

"Rule 23 gives the district courts 'broad discretion to determine whether certification of a class-action lawsuit is appropriate,'" *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2009), and "provides a one-size-fits-all formula for deciding the class-action question," *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 399 (2010). "A class 'may only be certified if the

4

trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied,' and 'actual, not presumed, conformance with Rule 23(a) remains ... indispensable.'" *Davis v. Hutchins*, 321 F.3d 641, 649 (7th Cir. 2003) (quoting *Gen. Tel.*, 457 U.S. at 160–61); *see also Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 558 (7th Cir. 2003).

A plaintiff seeking class certification must satisfy each requirement of Rule 23(a)—numerosity, commonality, typicality and adequacy of representation—and any one subsection of Rule 23(b). *Harper v. Sheriff of Cook Cty.*, 581 F.3d 511, 513 (7th Cir. 2009); *Arreola*, 546 F.3d at 794. In addition, the class must meet two implied prerequisites of Rule 23: (1) that the class definition be sufficiently precise to enable a court to ascertain the identity of class members by reference to objective criteria; and (2) that the named representative be a member of the proposed class. *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977).

The fact that the parties have reached a settlement is relevant to the class-certification analysis. *See Smith v. Sprint Comms. Co., L.P.*, 387 F.3d 612, 614 (7th Cir. 2004); *Amchem Prods. v. Windsor*, 521 U.S. 591, 618–20 (1997). "'Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial.'" *Smith*, 387 F.3d at 614 (quoting *Amchem Prods.*, 521 U.S. at 620). A court may not, however, "abandon the Federal Rules merely because a settlement seems fair, or even if the settlement is a 'good deal.' In some ways, the Rule 23

5

requirements may be even more important for settlement classes." *Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 985 (7th Cir. 2002). "This is so because certification of a mandatory settlement class, however provisional technically, effectively concludes the proceeding save for the final fairness hearing." *Ortiz*, 527 U.S. at 849.

The Court previously analyzed these factors and gave preliminary approval to class certification. Dkt. 42. The same reasons that supported the Court's preliminary approval of class certification also support final certification of the class. Dkt. 42 at 7–9.

**B. Appointment of Class Counsel**

"A court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1)(A). Rule 23(g) provides four factors a court must consider: (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

The Court previously considered these factors and designated Robert P. Kondras, Jr., Daniel Bryant, and Matthew Coffman as counsel for the preliminarily-certified Class and Collective Action. Dkt. 42 at 17–18. There are no new facts that weigh against this decision.

### C. Notice

For settlement classes, "the court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). The Preliminary Approval Order approved the content of the notice and proposed manner of notice. Dkt. 42 at 18. The Court now grants final approval of the notice, which adequately informed the Class members of the terms of the Settlement Agreement, the process available to obtain monetary relief, their right to request exclusion from the Class, and their opportunity to file written objections and appear and be heard at the Final Approval hearing. Dkt. 47-2. The Settlement Administrator also established a phone number and e-mail account to communicate and receive Class/Collective member inquiries, which was included in the Class Notice. Dkt. 47-2; dkt. 60 ¶ 9 (Grayson Decl.).

The parties have since followed the manner of notice set forth in the Settlement Agreement and the Preliminary Approval Order. Dkts. 37-1 and 42. The notices were mailed to 6,082 Class/Collective members. Dkt. 60 ¶¶ 6, 8. 718 notices were returned as undeliverable, and the Settlement Administrator obtained new addresses for 314 of those accounts. In sum, the Class Notice was successfully delivered to 93% of the Class/Collective. *Id.* ¶ 10. Thus, the Court approves manner of notice to class members under the requirements of Fed. R. Civ P. Rule 23(e)(1)(B).

**D. Motion for Attorney's Fees and Costs**

Under Federal Rule of Civil Procedure 23(h), "the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  "In assessing the reasonableness of an attorney fee award for a class action settlement, district courts should do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Camp Drug Store, Inc. v. Cochran Wholesale Pharm., Inc.*, 897 F.3d 825, 832–33 (7th Cir. 2018).  When considering reasonableness, district courts may consider the award either as percentage of the fund or through the lodestar method.  *Americana Art China Co. v. Foxfire Printing & Packaging, Inc.*, 743 F.3d 243, 247 (7th Cir. 2014).

Applying the percentage of the fund method, counsel is requesting an attorney fee award that represents approximately 30% of the overall fund.[2]

---

[2] The "ratio that is relevant to assessing the reasonableness of the attorneys' fee that the parties agreed to is the ratio of (1) the fee to (2) the fee plus what the class members received." *Redman v. RadioShack*, 768 F.3d 622, 630 (7th Cir. 2014). Although the maximum settlement award is $326,493, dkt. 37-1 at 10, § 4.1, in the fee-to-settlement ratio, the settlement is the amount minus the administration and notice costs.  *Redman*, 768 F.3d at 630.  Additionally, since this settlement contains a reversion clause for putative FLSA members that fail to opt-in and class members that opt-outs, the settlement value also should be calculated without those shares that, in fact, revert to the defendants.

FLSA collective members who opted in will receive $7.16, and Rule 23 class action member who didn't opt out will receive $28.65.  Dkt. 59 at 3.  The total actual value to the FLSA collective will be: $4,195.76 ($7.16 x 586 FLSA collective opt-ins).  The total payment to the class will be $174,089.16 ($174,261.06 – ($28.65 x 6 class action opt-outs)), equaling $178,284.92 in total relief.  To calculate the percentage of the fee, divide the requested attorney fees ($78,666.67) over the total class value plus the requested attorney fees ($256,951.59) for a percentage of 30.62%.

Requests for one-third of the settlement are within the normal rate of compensation for wage and hour class action and FLSA settlements in the Seventh Circuit.  See e.g., *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998) ("The typical contingent fee is between 33 and 40 percent."); *Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, No. 16 CIV. 3571, 2016 WL 5109196, at *4 (N.D. Ill. Sept. 16, 2016) ("Courts routinely hold that one-third of a common fund is an appropriate attorneys' fees award in class action settlement, including wage and hour settlements.")*; Campbell v. Advantage Sales & Mktg. LLC,* No. 1:09-CV-01430-LJM, 2012 WL 1424417, at *2 (S.D. Ind. Apr. 24, 2012) ("A fee of [33.33%] has been approved by a number of courts across the country in [FLSA settlements].").  The Court has also considered the fee agreement between class counsel and Ms. Skevington under which counsel would receive one-third of any net overall recovery but risked receiving nothing if there was no recovery.  Dkt. 48 at 8–10.  Therefore, the Court approves as reasonable an attorney's fee award of $78,666.67.

### E. Final Settlement Approval

The Court may approve the settlement only after finding that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  Rule 23(e)(2) requires the Court to consider whether (1) the class representatives and class counsel have adequately represented the class, (2) the proposal was negotiated at arm's length, (3) the relief provided by the settlement is adequate, and (4) the proposal treats class members equitably relative to each other.  Additionally, the Seventh Circuit has also identified the following factors as considerations

under Rule 23(e)(2): "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed." *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014)

The Court previously considered all these factors when granting preliminary approval to the Settlement Agreement. Dkt. 42 at 9–14. There, the Court identified several aspects of the settlement that supported approval, *id.* at 10–12, but also identified two features of the agreement "that g[a]ve the Court pause regarding the fairness of the settlement": the presence of a clear sailing provision and reversion clause, *id.* at 12–14. The parties provided supplemental briefing on the Settlement Agreement's fairness. Dkt. 45. The Court briefly revisits these factors to confirm the fairness, reasonableness, and adequacy of the settlement, all of which support final approval.

For the reasons previously stated, dkt. 42 at 10–12, the Settlement Agreement satisfies the factors of Rule 23(e)(2). The Court has also considered that the average claim is small ("likely far less than $50 per Class/Collective Member"), and this settlement avoids diluting that recovery with additional attorney's and administrative fees to determine precise shares. Dkt. 45 at 2. This rationale supports final approval, by avoiding "the expense of further litigation." *Wong*, 773 F.3d at 863. Counsel also argues that the reversion

10

clause is not unfair for Class opt-outs or Collective opt-ins because Hopebridge will not receive the benefit of a release of claims for those individuals. Dkt. 45 at 7. Finally, the parties explain that uncashed settlement checks will not revert, further supporting final approval. *Id.* at 8 (citing dkt. 37-1 at 15).

There are additional factors from *Wong* that support the Settlement Agreement. As explained above, the requested attorney's fee award is reasonable, supporting a finding that the settlement itself is reasonable under Rule 23(e)(2). Counsel for both Hopebridge and for the Class/Collective have competence and experience in these types of wage and labor disputes and believe that this settlement is fair. Dkt. 45; *Wong*, 773 F.3d at 863. The only objection to the Settlement Agreement lacked specificity and therefore was overruled at the Fairness Hearing.[3] The Court now orders that Ms. Thomas, the lone objector, dkt. 57, be considered and participate in the settlement as a member of the Class and Collective. The Court also considered that there were only six class opt-outs. Dkt. 57; *Wong,* 773 F.3d at 863. Additionally, one class/collective member appeared at the hearing to ensure her inclusion in the class.

Therefore, the Court finds the Settlement Agreement is fair, reasonable, and adequate, and approves it.

### F. Settlement Collective

---

[3] As explained on the record at the hearing, Ms. Thomas's objection, which only states that she objects to the settlement without further elaboration, fails to meet the requirements of Fed. R. Civ. P. 23(e)(5)(A), which requires objectors to "state whether it applies only to the objector, to a specific subset of the class, or to the entire class, and also state with specificity the grounds for the objection."

The Court conditionally certified the FLSA Collective as a collective action under the FLSA, 29 U.S.C. § 216(b). Dkt. 42 at 15–16. Notice was sent to eligible members of the certified collective, giving them an opportunity to opt-in to this lawsuit. 586 individuals have opted in. Dkt. 54 at 1.

"Where the parties reach settlement after a court has conditionally certified a collective class, the court still must make some final class certification before approving a collective action settlement." *Adams v. Aztar Indiana Gaming Co., LLC*, No. 320CV00143MPBMJD, 2023 WL 6536785, at *7 (S.D. Ind. Aug. 11, 2023). As explained in the Preliminary Approval Order, Ms. Skevington has succeeded in showing that the proposed collective members are similarly situated, based on evidence that all prospective FLSA members were subject to a common policy whereby Hopebridge was treating recorded breaks of 20 minutes or less as unpaid time and the parties' joint assertion that the FLSA collective are similarly situated. Dkt. 42 at 15 (citing Dkt. 38-1 ¶ 14 (Kondras Decl.)). The Court agrees and further certifies, for settlement purposes only, the following FLSA Collective pursuant to the Settlement Agreement and 29 U.S.C. § 216(b):

> All non-exempt, hourly-paid Registered Behavior Technicians ("RBTs") employed by Hopebridge, LLC at one or more of its locations in the United States at any time between December 28, 2019 and May 12, 2022.

Like the class action, the FLSA Collective does not include any RBT who opted in as a plaintiff and is entitled to a recovery in the settlement reached in the *Myres* case.

12

FLSA collective action settlement agreements require judicial approval. "Normally, a settlement is approved where it is the result of contentious arm's length negotiations, which were undertaken in good faith by counsel … and serious questions of law and fact exist such that the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation." *Campbell,* 2012 WL 1424417, at *2 (internal quotations omitted). For the same reasons that the Court finds the Settlement Agreement is fair, reasonable, and adequate under Fed. R. Civ. P. 23(e)(2), the Court likewise finds that the resolution of the FLSA claims represents a fair and reasonable resolution of a bona fide dispute.

## IV.
## Conclusion

The Joint Motion for Final Approval of Class Action Settlement and Plaintiffs' Motion for Attorney's Fees are **GRANTED**. Dkts. [59] and [46].

After holding a hearing, the Court **GRANTS FINAL APPROVAL** of the class settlement as fair, reasonable, and adequate under Federal Rule of Civil Procedure 23(e)(2) and the FLSA collective as fair, adequate, and reasonable compromise of a bona fide dispute. Ms. Skevington, Hopebridge, and their counsel are directed to implement and consummate the Settlement Agreement according to its terms and provisions.

The Court further finds and orders as follows:

1. The previously certified Class is finally certified under Federal Rule of Civil Procedure 23(b)(3) for settlement purposes.

2. The Court confirms the appointments of (a) Named Plaintiff Jacqueline Skevington as Class Representative of the Settlement Classes, (b) Robert P. Kondras, Daniel Bryant, and Matthew Coffman as Class Counsel, and (c) Analytics Consulting, LLC as the Settlement Administrator of the claims process.

3. Per the Settlement Agreement, Hopebridge agrees to pay $326,493 to resolve the lawsuit. From that amount, the Court approves: a $5,000 service award to Ms. Skevington; $78,666.67 in attorney's fees for Class Counsel; $25,000 in in administration costs for Analytics Consulting, LLC. These payments shall be made from the Settlement Fund according to the procedures set forth in the Settlement Agreement

4. Class Members and Collective Members shall receive their settlement shares according to the allocation formula and procedures set forth in the Settlement Agreement.

5. The Court orders that all Class Members and Opt-in Collective Members are bound by the terms of the Settlement Agreement and fully release and discharge their claims.

Based on this settlement, this matter is **DISMISSED WITH PREJUDICE**. Final judgment will issue by separate entry.

**SO ORDERED.**

Date: 8/13/2024

_James Patrick Hanlon_
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All electronically registered counsel